O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL MARLO, | ) | Case No. CV 03-04336 DDP (RZx) |
| | ) | |
| Plaintiff, | ) | **ORDER DECERTIFYING THE CLASS** |
| | ) | |
| v. | ) | [Order Setting Decertification |
| | ) | Hearing filed on April 3, 2008] |
| UNITED PARCEL SERVICE, INC., | ) | |
| a corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |

This matter is before the Court on the Court's Order Setting a Decertification Hearing. (Order Setting Decertification Hearing, April 1, 2008.) Michael Marlo ("Plaintiff") filed this action, on behalf of himself and a class of similarly situated individuals ("the class"), against United Parcel Service, Inc. ("UPS") for violations of California state law wage-and-hour law. A class was certified pursuant to Federal Rule of Civil Procedure 23 on June 10, 2004. After meeting with the parties on several occasions, reviewing the many papers submitted by the parties in this action, and hearing oral argument, the Court finds that it is appropriate to decertify the class.

///

///

## I.    BACKGROUND

In 2003, Plaintiff Marlo filed a class action complaint
against UPS that asserted several claims, including failure to pay
overtime compensation and failure to provide meal and rest breaks
in violation of California law.  The Court granted Plaintiff's
motion for class certification on June 10, 2004.  The class was
composed of all UPS employees working in California in the capacity
of Full-Time Preload Supervisors, Full-Time Package Center
Supervisors (also known as "On Road Supervisors"), and Full-Time
Hub Operations Supervisors (collectively "Full-Time Supervisors" or
"FTS") from May 6, 1999 to the present.  (Order Granting Class
Certification, June 10, 2004.)

UPS's Motion For Summary Judgment Or, In the Alternative,
Partial Summary Judgment Based On the Executive and Administrative
Exemptions ("UPS's Motion For Summary Judgment"), and Plaintiff
Marlo's Motion For Partial Summary Judgment As To Executive
Exemption and Motion For Partial Summary Judgment As To
Administrative Exemption ("Plaintiff's Motions For Partial Summary
Judgment") came before the Court on August 17, 2005.  On August 23,
2005, the Court granted Defendant's Motion For Summary Judgment and
denied Plaintiff's Motions For Partial Summary Judgment, which
resolved all the claims presented in the complaint in UPS's favor
as to Plaintiff and all members of the class.  (Order Granting
Defendant's Motion for Summary Judgment, August 23, 2005.)

On October 25, 2007, the Ninth Circuit reversed and
remanded the case.  Marlo v. UPS, Inc., 254 Fed. Appx. 568 (9th
Cir. October 25, 2007).  The Ninth Circuit held that Plaintiff had
"raised material issues of fact related to whether the FTS

1   'customarily and regularly exercised discretion and independent

2   judgment.'"    <u>Id.</u>    This Court held a remand hearing on January 25,

3   2008.  At that hearing, the Court indicated that the case should

4   proceed to trial.  Subsequently, the Court met with the parties on

5   several occasions to discuss various substantive and management

6   issues in preparation for trial, and also received a number of

7   briefs on those issues.  During the course of these sessions, the

8   Court became increasingly concerned that individualized issues may

9   predominate over class-wide issues, and that as a result,

10  Plaintiff's class may no longer satisfy the Rule 23 requirements.

11  The Court thus decided to entertain further briefing from the

12  parties and to have an additional hearing regarding

13  decertification.

14

15  **II.   LEGAL STANDARD FOR CLASS DECERTIFICATION**

16      The district court's order to grant class certification is

17  subject to later modification, including class decertification.

18  <u>See</u> Fed. R. 23(c)(1)(C) ("An order that grants or denies class

19  certification may be altered or amended before final judgment.");

20  <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 n.11 (1978)

21  (describing a court's class certification order as "inherently

22  tentative"); <u>see also</u> <u>Officers For Justice v. Civil Serv. Comm'n</u>,

23  688 F.2d 615, 633 (9th Cir. 1982).  In considering the

24  appropriateness of decertification, the standard of review is the

25  same as a motion for class certification: whether the Rule 23

26  requirements are met.  <u>O'Connor v. Boeing N. Am., Inc.</u>, 197 F.R.D.

27  404, 410 (C.D. Cal. 2000).

28

1    Rule 23(a) requires that class members demonstrate numerosity,

2   commonality, typicality, and adequate representation of the class

3   interest.  Fed. R. Civ. Pro. 23(a); <u>Hanon v. Dataproducts Corp.</u>,

4   976 F.2d 497, 508 (9th Cir. 1992).  Rule 23(b)(3) additionally

5   requires that the court find "questions of law or fact common to

6   the members of the class predominate over any questions affecting

7   only individual members, and that a class action is superior to

8   other available methods for the fair and efficient adjudication of

9   the controversy."  Fed. R. Civ. Pro. 23(b)(3).

10    Although certification decisions are not to focus on the

11   merits of a plaintiff's claim, <u>see</u> <u>Eisen v. Carlisle and Jacquelin</u>,

12   417 U.S. 156, 178 (1974), a district court reevaluating the basis

13   for certification may consider its previous substantive rulings in

14   the context of the history of the case, <u>O'Connor</u>, 197 F.R.D. at

15   410, and may "consider the nature and range of proof necessary to

16   establish the [class-wide] allegations."  <u>Id.</u> (citing <u>In re</u>

17   <u>Coordinated Pretrial Proceedings in Petroleum Products Antitrust</u>

18   <u>Litig.</u>, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing <u>Blackie v.</u>

19   <u>Barrack</u>, 524 F.2d 891, 901 (9th Cir. 1975)).

20

21   **III. DISCUSSION**

22    Here, the Court considers decertification of a class of

23   approximately 1200 supervisors that work for UPS.  In what follows,

24   the Court first mentions the changed circumstances since the

25   initial certification decision, that along with more basic concerns

26   about common proof of misclassification, support considering

27   decertification.  The Court then discusses California law on the

28   overtime exemption in the context of a class action lawsuit and

4

1  examines the burden of proof on misclassification in a class action

2  trial.  After a brief review of the parties' evidence in this case,

3  the Court proceeds to the Rule 23 inquiry, which focuses on whether

4  there is commonality and whether there is a predominance of common

5  issues such that class treatment remains appropriate.

6

7      A.  <u>Changes Since The Court's Certification Order</u>

8      In its Order granting class certification, the Court found

9  that the Rule 23(a) and Rule 23(b)(3) requirements had been

10 satisfied.  Among its findings, the Court determined that there was

11 commonality and a predominance of common issues based upon class

12 members' similar job duties, UPS's overtime exemption policy, and

13 the predominant legal question was "whether UPS wrongly classified

14 Full Time Supervisors as exempt from overtime compensation."

15 (Order Granting Class Certification, at 6, 13.)  Notably, the Court

16 accepted Plaintiff's representation that common proof of

17 misclassification would be offered to determine the class-wide

18 applicability of the exemption.[1]

19     Plaintiff contends that decertification is inappropriate

20 because circumstances supporting class treatment have not changed:

21 UPS maintains a uniform exemption policy and the evidence shows

22 that this policy is one of misclassification.  (Pl.'s Opp'n to

23 Decertification, at 2-3.)  However, since certification, the Court

24 has addressed both parties' motions for summary judgment, which

25 required an in-depth review of the evidence that would support each

26

27     [1]  (Order Granting Class Certification, at 12.) ("[P]laintiff
28 asserts that the manner in which [FTS] spend their time can be
determined without individualized proof.")

1  party's case at trial.  While the Ninth Circuit reversed the Order

2  granting UPS summary judgment, many of the concerns expressed by

3  the Court in that Order remain.  Then and now, the Court was

4  concerned about the class-wide applicability of the evidence.  (See

5  Order Granting Defendant's Motion for Summary Judgment, 9, 14, 15-

6  16, 33, 36.)  In light of the individualized nature of some aspects

7  of the exemption test, this concern has ripened into doubt

8  regarding the continuing efficacy of a class action in this case.

9      The Court has continued to struggle with these concerns while

10  meeting with the parties in an effort to resolve a number of issues

11  to manage a trial in this action.  Plaintiff's counsel have not

12  adequately explained how they intend to try this case, have not

13  supported their assertion to having representative evidence, and

14  have otherwise failed to take affirmative steps to assist the Court

15  in management of trial.  Ultimately, these meetings with counsel

16  have further confirmed the need to reevaluate the initial

17  certification decision.

18      Indeed, the Court does not doubt that Plaintiff has shown

19  triable issues of fact whether at least some FTS are exempt or non-

20  exempt employees.  However, in rethinking this case, the Court has

21  come to realize that whether Rule 23 requirements are satisfied,

22  especially commonality and predominance of common issues, and

23  whether a party has common evidence to enable a fact-finder to make

24  a class-wide determination are interrelated inquiries.[2]  In

25  _____

26      [2] The Court is careful to distinguish this observation from
   the kind of merits-determination that is disfavored with respect to
27  class certification decisions.  When considering class
   certification, a court should not weigh the evidence or otherwise
28  evaluate the merits of a plaintiff's class claim.  See Eisen, 417
                                                        (continued...)

1  retrospect, the Court recognizes that its concerns with common

2  proof of class-wide misclassification at the summary judgment stage

3  would best have been directed to the question whether

4  decertification was appropriate.  See O'Brien v. Sky Chefs, Inc.,

5  670 F.2d 864, 869 (9th Cir. 1982), overruled on other grounds by

6  Atonio v. Wards Cove Packing Co., Inc., 810 F.2d 1477 (9th Cir.

7  1987) (finding where "plaintiffs produced no evidence of classwide

8  discrimination" that "decertification of the class was more

9  appropriate than summary judgment against the class").

10     Having explained the changed circumstances in this case and

11 before turning to the Rule 23 inquiry, the Court will discuss

12 California law on the overtime exemption in a class action.

13

14     B.   California's Executive Exemption in Class Actions

15     California law requires that all employees receive overtime

16 compensation and authorizes civil actions for the recovery of

17 unpaid compensation.  California Labor Code §§ 510, 1194.[3]

18 California law exempts from overtime pay those persons employed in

19 executive or administrative capacities.  The executive exemption

20 applies to any employee:

21

22

23        [2](...continued)
   U.S. at 178.  However, this principle does not prevent a court from

24 comparing the class claims, the type of evidence necessary to
   support a class-wide finding on those claims, and the bearing of

25 those considerations on Rule 23 certification.

26        [3] Under section 3(A) of the Industrial Welfare Commission
   ("IWC") Wage Order, employees must be compensated at 1.5 times the

27 employee's normal rate of pay for all overtime worked.  IWC Wage
   Order No. 9, codified at 8 California Code of Regulations

28 ("C.C.R.") § 11070.

                                   7

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. . . .

8 C.C.R. § 11070(1)(A)(1).

Wage-and-hour class actions challenging an employer policy of exempting employees have been certified based upon common proof of misclassification. See, e.g., Sav-on Drug Stores, Inc., 34 Cal. 4th 319 (2004); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474 (E.D. Cal. 2006); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005). Some courts, on the other hand, have denied certification of classes challenging misclassification when the evidence showed individual differences in employee duties such that individualized issues would predominate over class-wide determinations. See, e.g., Sepulveda v. Walmart Stores, 237 F.R.D. 229, 249 (C.D. Cal. 2006); Jiminez v. Domino's Pizza, Inc., 238 F.R.D. 241, 252 (C.D. Cal. 2006); Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422 (2006).

The burden of proof in a class action trial on the executive exemption has been an issue of dispute in this case addressed several times at hearings and meetings with the parties. Under California law, the employer bears the burden of demonstrating

8

1  that an employee is exempt from the Labor Code's overtime

2  requirements.  <u>Nordquist v. McGraw-Hill Broadcasting Co., Inc.</u>, 32

3  Cal. App. 4th 555, 562 (1995).  However, in order to maintain a

4  class action challenging the overtime exemption, a plaintiff must

5  have common evidence to support a legal theory of

6  misclassification, either "that deliberate misclassification was

7  defendant's policy or practice" or similarly, that "classification

8  based on job descriptions alone resulted in widespread de facto

9  misclassification."  <u>Sav-On Drug Stores, Inc. v. Superior Court</u>,

10 34 Cal. 4th 319, 329 (2004).[4]  A class action is appropriate if

11 "plaintiffs are able to demonstrate pursuant to either scenario

12 that misclassification was the rule rather than the exception. . .

13 ."  <u>Id.</u> at 330.

14      The subject of the dispute over the burden of proof has

15 concerned whether there is any difference between an individual

16 case, where it is well-established that an employer has the burden

17 of proving that the overtime exemption was appropriate, and a

18 class action challenging an employer's decision to classify as

19 exempt a group of employees.  UPS has argued that Plaintiff in

20 bringing this case as a class action has the burden of ultimately

21 proving misclassification on a class-wide basis.  UPS has also

22 suggested that trial be organized in a similar fashion to pattern-

23 and-practice discrimination cases, with Plaintiff having to make

24

25      [4] Although Rule 23 governs certification of a state law class
   action in federal court, and the California Supreme Court in <u>Sav-On</u>
26 was asked whether class certification was appropriate under
   California class action requirements, the Court and the parties
27 here have considered <u>Sav-On</u> persuasive authority with respect to
   class actions challenging misclassification of employees as exempt
28 under California wage-and-hour law.

out a prima facie case, UPS providing evidence to show that its exemption decision was legitimate, and Plaintiff having the ultimate burden of proving misclassification.  (Joint Statement Regarding Trial Management Issues, at 8-11, 18.)

    For some time as the Court has met with the parties regarding trial management, Plaintiff's position on this issue was unclear. For example, Plaintiff has simultaneously argued that "Plaintiff bears the ultimate burden of proving that [UPS] violated California law by not paying overtime on a class wide basis to [FTS]" and that "[UPS] must prove the affirmative defense [of the exemption] on a class-wide basis."  These were statements by Plaintiff appearing in the same document, that is, the parties' Joint Statement of Regarding Trial Management Issues.  (Compare Joint Statement Regarding Trial Management Issues, at 3 & 5, 14 with id. at 4, 5.)  When the Court asked for clarification during its meetings with counsel, it had the impression that Plaintiff agreed it had the burden of proving class-wide liability.

    However, since that time and most recently in its briefing on decertification, Plaintiff has argued that an employer's burden of proof in an individual case also applies in the context of a class action – UPS must show that it properly classified the FTS as exempt on a class-wide basis.  (Pl. Opp'n to Decertification, at 9-15.)  Moreover, Plaintiff has suggested it would present a prima facie case that UPS classified the FTS as exempt and did not pay overtime, a prima facie case to which UPS was willing to stipulate.  Then UPS would have the burden of proving that it properly applied the exemption on a class-wide basis.  (Id. at 19-20.)

1    The Court finds that Plaintiff has the ultimate burden of

2  proving misclassification at a class action trial.  A plaintiff

3  bringing a class action normally has the ultimate burden of

4  proving class-wide liability at trial.  <u>See, e.g.</u>, <u>Teamsters v.</u>

5  <u>United States</u>, 431 U.S. 324, 336 (1977).  Because Plaintiff has

6  brought a class action challenging UPS's exemption of FTS as a

7  policy of misclassification, Plaintiff must be "able to

8  demonstrate pursuant to either scenario that <u>misclassification was</u>

9  <u>the rule rather than the exception</u>. . . ." <u>Sav-On Drug Stores,</u>

10  <u>Inc.</u>, 34 Cal. 4th at 330 (emphasis added).  Where, as here,

11  Plaintiff has sought the benefit of class treatment, he too must

12  accept its burden.  This burden may be met with common proof of

13  misclassification.  <u>See</u> <u>id.</u>

14    The Court finds this approach consistent with the rule that

15  an employer has the burden of proving the exemption as an

16  affirmative defense in an individual case.  As to any individual,

17  UPS would have the burden of proving the exemption was proper.

18  However, as to a class-wide finding of misclassification which is

19  the result Plaintiff seeks here, Plaintiff would have the ultimate

20  burden of showing misclassification on a class-wide basis.  This

21  does not mean to succeed at trial, or to otherwise maintain a

22  class action, that Plaintiff is required to show that all or

23  substantially all FTS were misclassified.  Rather, Plaintiff must

24  show that it is more likely than not that UPS's exemption as

25  applied to FTS was a policy or practice of misclassification.  In

26  any event, a plaintiff must provide common evidence of

27  misclassification to maintain class certification and proceed with

28

1   a class action trial.  See Sav-On Drug Stores, Inc., 34 Cal. 4th
2   at 330-31.

3

4       C.   Predominance

5       Here, the decertification inquiry focuses on whether the Rule
6   23(a) commonality and Rule 23(b)(3) predominance requirements have
7   been met.[5]  At a broad level of generality, the commonality
8   requirement remains satisfied because there is the common question
9   whether the FTS were properly classified as exempt employees.  See
10  Sec. Harris v. Palm Soring Alpine Estates, Inc., 329 F.2d 909, 914
11  (9th Cir. 1964) (commonality requires only that class members be
12  similarly situated in sharing common questions of law or fact).
13  Although the Court questions the satisfaction of commonality, the
14  Court addresses these concerns in its predominance inquiry and
15  will not further consider the element of commonality.

16      The predominance requirement demands a rigorous inquiry that
17  "tests whether proposed classes are sufficiently cohesive to
18  warrant adjudication by representation."  Amchem Products, Inc. v.
19  Windsor, 521 U.S. 591, 623-24 (1997).  To satisfy this
20  requirement, it is not enough simply that common questions of law
21  or fact exist; predominance is a comparative concept that calls
22  for measuring the relative balance of common issues to individual
23  ones.  See id.  "Implicit in the satisfaction of the predominance
24  test is the notion that the adjudication of common issues will
25  help achieve judicial economy."  Zinser v. Accufix Research Inst.,

26

27

28      [5] There is no serious dispute that the other Rule 23(a)
    requirements are satisfied.

1    <u>Inc.</u>, 253 F.3d 1180, 1189 (9th Cir. 2001) (citing <u>Valentino v.</u>

2    <u>Carter-Wallace Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996)).

3              1.    <u>The Parties' Evidence</u>[6]

4              a.    <u>Plaintiff</u>

5         Plaintiff argues that each type of FTS - Pre-Load, On-Road,

6    and Hub - perform similar duties across California, that UPS

7    classifies the FTS as exempt based their job titles, and that UPS

8    maintains a uniform classification policy.  Plaintiff concludes

9    that commonality, as well as predominance of common issues, is

10   satisfied and that this case should proceed as a class action.

11        At the time of summary judgment, Plaintiff had submitted

12   Plaintiff's declaration along with the declarations of

13   approximately ten FTS employees.  The declarations contained

14   similar statements to the effect that those employees did not have

15   authority to hire or fire others, and that they did not exercise

16   independent discretion or judgment in discharging their job

17   duties.  (<u>See, e.g.</u>, Marlo Decl. in Opp'n UPS's MSJ 11, 13; Flynn

18   Decl. 7; Goudie Decl. 7; Kemp Decl. 7; Rice Decl. 7.)  During

19   hearings before the Court, Plaintiff has represented that more

20   declarations have been taken, and also, that a significant number

21   of individuals would testify at trial that they were

22   misclassified.

23        Other than the individual testimony, Plaintiff relies heavily

24   on a telephone survey conducted by Mary Spain ("Spain survey") of

25   Opinion Resources, Inc.  The Spain survey asked 160 FTS various

26   

27        [6] The Court extensively described the parties' evidence in its
28   prior Order on summary judgment.  (Order, 10-16.)  The Court,
     therefore, offers a brief review as it pertains to decertification.

questions regarding performance of their job duties.  Plaintiff
has submitted samples of UPS's standardized procedures, including
the UPS's Job Breakdown Analysis ("JBA") forms describing the
FTS's job duties.  Plaintiff also has offered UPS's Employee
Relations Index ("ERI") survey, where UPS employees may provide
anonymous comments while responding to UPS's annual employee
survey, although it is unclear to what extent Plaintiff still
relies on the ERI comments since this evidence was not discussed
in response to the Court's inquiries at a recent hearing.  (See
Tr. Status Conf. Re: Joint Statement of Trial Management Issues,
March 28, 2008.)

b.    UPS

UPS contends that a standard policy alone does not support
class treatment in this context, where the exemption test involves
an individualized inquiry regarding a particular FTS's exercise of
discretion and judgment and how a particular FTS spends their
time, and determinations will vary based upon a number of
circumstances.  UPS further contends that Plaintiff lacks common
evidence representative of a class of FTS employees; at best, UPS
argues, Plaintiff is able to show that some FTS are improperly
exempt, while others are properly exempt.  UPS concludes that
Plaintiff has not come forward with class-wide evidence, which
counsels against maintenance of the class action.

UPS has submitted declarations and depositions of FTS and
managers that, contrary to Plaintiff's declarations, maintain FTS
do in fact exercise independent discretion and judgment, are
primarily engaged in exempt work, and otherwise satisfy the

14

1  elements for the overtime exemption.  UPS would call a number of

2  the FTS and managers as witnesses at trial.  UPS has also provided

3  several additional sources of evidence, including an expert Job

4  Activity Analysis to identify employees' duties and analyze the

5  nature of those duties, a field survey interviewing employees, a

6  time-motion study recording the job activities of FTS, an expert

7  analysis of the amount of time that FTS spent on particular

8  activities, and quality performance reviews as evidence of UPS's

9  expectations regarding work performance.

10

11          2.   Analysis

12      The existence of a uniform policy classifying the FTS as

13  exempt does not necessarily establish that the policy was

14  misclassification.  It is possible to have a classification policy

15  that properly classifies some employees as exempt and improperly

16  classifies others as exempt.  See, e.g., Dunbar, 141 Cal. App. 4th

17  at 1427.  An exemption policy is different from a facially

18  unconstitutional policy of discrimination, for example, in that

19  something more must be shown to establish that the policy was

20  wrongful.  In other words, a class-wide determination of

21  misclassification generally cannot be provded from the existence

22  of an exemption policy alone.

23      To show that an exemption policy resulted in widespread

24  misclassification, there has to be some common proof that allows a

25  fact-finder to make a class-wide determination.  Sav-On, 34 Cal.

26  4th at 329-330.  In the Sav-On decision, the California Supreme

27  Court explained that class certification should be supported by

28  "substantial evidence" of misclassification, id. at 329, referring

15

1  to a plaintiff's "common proof" or "common evidence," <u>id.</u> at 330

2  n.4, 336.  The need for common proof recognizes that a plaintiff's

3  evidence should have some common application to class members in

4  order to provide a basis for the jury to find that

5  "misclassification was the rule rather than the exception."  <u>See</u>

6  <u>id.</u> at 330.  Otherwise, there is a risk that without common proof

7  the inquiry will raise individualized issues since that inquiry

8  focuses "first and foremost, [on] how the employee actually spends

9  his or her time."  <u>Ramirez v. Yosemite Water Co.</u>, 20 Cal.4th 785,

10  802 (1999).

11      The need for common proof dovetails with the Rule 23

12  requirements of commonality and predominance.  One of the primary

13  goals of the class device is to adjudicate the claims of a large

14  group of similarly situated individuals when it is efficient and

15  manageable to do so.  The commonality and predominance

16  requirements are designed to promote the goals of efficiency and

17  judicial economy by focusing on whether a class action makes sense

18  based upon the balance of common and individual issues.  The

19  presence of some individualized issues does not preclude class

20  treatment.  However, when individualized issues or determinations

21  become central to a case, the class action no longer advances the

22  efficiency and economy for which it was intended.

23      One way this can happen is when a plaintiff brings a claim on

24  a class-wide basis that raises individualized issues, but fails to

25  provide common proof that would have allowed a jury to determine

26  those issues on a class-wide basis.  This is Plaintiff's failure

27  in this case – Plaintiff has not provided common proof to support

28  a class-wide judgment as to liability.  In the absence of common

1  proof, the jury may have sufficient evidence to make judgments as

2  to particular individuals, but lacks a basis to extrapolate from

3  those findings to a class-wide judgment.[7]  This is a situation

4  where a class action is neither efficient nor appropriate as the

5  record is limited to evidence of individual claims.  As there is

6  no common proof of misclassification in this case, there is no

7  basis to adjudicate class-wide misclassification and the result is

8  that individualized issues predominate over common ones.

9      At the March 28 hearing, the Court asked that Plaintiff's

10  counsel describe its evidence in this case.  Plaintiff's counsel

11  indicated that a main source of the class's evidence was the Spain

12  survey.  (Transcript of March 28 Hearing ("Hearing Tr."), at 56.)

13  The Court proceeded to ask Plaintiff's counsel whether the Spain

14  survey was common evidence.  Specifically, the Court asked whether

15  Mary Spain would testify that the survey was representative and

16  that it was statistically significant.  Plaintiff's counsel said

17  that she would.  (Hearing Tr. 50:3-9, 49:5-11.)

18      However, Plaintiff counsel's statements were incorrect.

19  Contrary to Plaintiff counsel's representations, Mary Spain stated

20  in her deposition that she did not know whether the survey sample

21  was representative, did not do anything to evaluate whether the

22  sample was representative, and was unaware of any guidelines for

23  ensuring that a survey provides representative evidence.  (Spain

24  Depo. 122:21-124:8, 132:22-133:3, 36:25-37:16; see also Supplement

25

26      [7] Common proof could involve simple reference to policies in
some cases, but will often require individual employee testimony,
27  expert testimony, generalized surveys, statistical analyses, or
some combination of all this evidence.  The type of common proof
28  needed will vary based upon the factual circumstances and alleged
legal wrong.

1    to Defendant UPS's Rebuttal to Representations Made by Plaintiff,

2    April 1, 2008.)  In fact, Spain had nothing to do with the

3    survey's design – Plaintiff's counsel wrote the survey questions.

4    (Spain Depo. 74:25-75:4, 67:16-18, 98:14-20.)

5         Plaintiff also retained Beth Chung-Herrera, an associate

6    professor of business administration, to review the survey

7    questions for bias.  However, she too had no background in survey

8    methodology, no knowledge of the purpose of the survey or facts of

9    this case, and did not have any role in designing the survey.

10   (Chung-Herrera Depo. 26:12-18, 28:21-29:19, 47:25-48:18, 130:21-

11   22, 132:12-133:6; Declaration of Chung-Herrera ¶ 5.)  When the

12   Court requested briefing on decertification that specifically

13   identified its concerns with the apparently unrepresentative

14   nature of the Spain survey, the Plaintiff's brief did not discuss

15   – nor even mention – the Spain survey.  (See Pl.'s Opp'n

16   Decertification.)  Here, Spain and Chun-Herrera are unable to

17   testify that the Spain survey is representative.

18        Moreover, the Spain survey is not "the product of reliable

19   principles and methods."  Daubert v. Merrell Dow Pharmaceuticals,

20   Inc., 509 U.S. 579 (1993).  The parties split the class members

21   into two random samples.  This, however, does not establish the

22   reliability of surveys conducted from those samples.  Even when

23   one begins with a random sample, one should take measures to

24   assure that nonresponses are random and provide analysis of the

25   reasons of nonresponse.  See Federal Judicial Ctr., Reference

26   Manual on Scientific Evidence 245-46 (2000 ed.); see also Federal

27   Judicial Ctr., Reference Manual on Scientific Evidence 367-369

28   (2005-2006 ed.)  Here, of the 614-person sample, Spain conducted

18

1    interviews of 160 individuals.  Spain did not analyze the reasons

2    for nonresponse, nor did the survey inquire of the characteristics

3    of the respondents to allow such analysis.

4         The survey suffers from additional flaws, including the fact

5    that Plaintiff's counsel who has not claimed to be an expert on

6    survey methodology appears to have designed the questions.  Even

7    if the Court were to stretch the rules of reliability and permit

8    this evidence to be presented to a jury, the Spain survey asked

9    vague and ambiguous questions that largely did not address

10   elements of the exemption and thus has essentially no probative

11   value.[8]  Given its methodological and design problems, the Spain

12   survey cannot qualify as common proof of misclassification because

13   it is unrepresentative, unreliable, and has essentially no

14   probative value.

15        Plaintiff's other evidence does not fill the gap.  The ERI

16   comments, while perhaps of some anecdotal value, are not

17   representative of the class.  The ERI comments appear in an annual

18   survey conducted by UPS.  The ERI comments are discretionary

19   responses to the question "Would you like to type in a comment?"

20   There is no suggestion that UPS follows a reliable methodology in

21   conducting this survey.  What's more, the survey is not limited to

22   FTS, and while it is known whether a particular respondent is a

23   "Supervisor," it is unclear whether any particular "Supervisor"

24   respondent is one of the FTS employees in the class or otherwise.

25

26        [8] The Court discussed the flaws with the Spain survey's
     questions at length in its prior Order on Summary Judgment.
27   (Order, at 31-32.)  The Court need not recount those problems here
     because the focus in considering maintenance of the class is
28   whether the evidence is representative.

1  The JBA forms, which describe FTS job duties, provide some

2  indication of UPS's expectations, but again, the focus of the

3  exemption test is the employee's actual work activities and these

4  job descriptions simply do not establish what FTS actually do.

5      Equally important, there is no indication that Plaintiff's

6  evidence addresses the "primarily engaged" element of the

7  exemption, and specifically the week-by-week aspect of the

8  analysis.  The regulation offers the following guidance for

9  determination whether an employee is "primarily engaged" in exempt

10 or non-exempt work: "The work actually performed by the employee

11 during the course of the workweek must, first and foremost, be

12 examined and the amount of time the employee spends on such work,

13 together with the employer's realistic expectations and the

14 realistic requirements of the job, shall be considered in

15 determining whether the employee satisfies this requirement."  8

16 C.C.R. § 11070(1)(A)(1) (emphasis added).  In California, an

17 employee is "primarily engaged" in exempt work if more than one-

18 half that employee's work-time in a workweek is devoted to exempt

19 activities.  Cal. Lab. Code § 515(e).  The Court does not suggest

20 that a showing of the amount of time each individual spends on

21 exempt versus nonexempt work is necessarily required to maintain a

22 class action.  A plaintiff could present common proof on this

23 issue.  See Sav-On, 34 Cal. 4th at 336-37.  Here, Plaintiff has no

24 common proof to show whether FTS were engaged in exempt or

25 nonexempt work, and also has not presented a plan for how to

26 proceed with this issue at trial.

27      Plaintiff's evidence at trial primarily would be individual

28 FTS's testimony.  To counter this testimony, UPS would offer the

1  testimony of managers to discuss the job duties of Plaintiff's
2  witnesses and testimony from FTS employees suggesting that they
3  are exempt.  The exempt/non-exempt inquiry focuses on what an
4  employee actually does.  The declarations and deposition testimony
5  of FTS submitted by the parties suggest variations in job duties
6  that appear to be a product of employees working at different
7  facilities, under different managers, and with different customer
8  bases.  Without more than this individual testimony, the Court
9  cannot conceive how the overtime exemption will be presented to
10  the jury as a common issue for class-wide adjudication, as opposed
11  to a number of individualized inquiries.  There is a significant
12  risk that the trial would become an unmanageable set of mini-
13  trials on the particular individuals presented as witnesses.

14      Plaintiff's evidence is essentially individual testimony and
15  an exemption policy.  Under the circumstances in this case, where
16  Plaintiff alleges that 1200 FTS have been misclassified as exempt
17  employees, Plaintiff had to provide common evidence to support
18  extrapolation from individual experiences to a class-wide judgment
19  that is not merely speculative.  Plaintiff has not come forward
20  with common proof sufficient to allow a fact-finder to make a
21  class-wide judgment as to the FTS.  Moreover, none of this
22  evidence addresses the "primarily engaged" prong of the exemption.
23  Because Plaintiff lacks common evidence, the Court has no
24  confidence that the jury will be able to do anything but speculate
25  as to a class-wide determination.  Accordingly, under the
26  particular facts of this case, the Court finds that individual
27  issues predominate over common ones.  As a result, the Court
28  decertifies the class.

1    The result in this case could have been different.  A

2    plaintiff that offers reliable common evidence should not face

3    decertification.  Here, Plaintiff has not done so.  For the past

4    several months, the Court inquired of Plaintiff's counsel how they

5    intended to try this case.  On several occasions, the Court

6    received unsatisfactory answers.  Some of those inquiries have

7    been recounted here, including Plaintiff counsel's statements

8    regarding the Spain survey.  As an additional example, Plaintiff

9    stated at the March 28 hearing that after proving class-wide

10   liability, there would be a damages phase where UPS would "have

11   the opportunity to . . . knock out whoever they believe [should

12   not properly] receive the award."[9] (Tr. 24:16-23.)  The Court

13   questioned the need for the class if liability would have to be

14   tried a second time at the damages phase, and although Plaintiff's

15   counsel retracted this position, this exchange illustrates that

16   Plaintiff's counsel did not conceptualize the trial management of

17   common issues through the class mechanism.  Moreover, Plaintiff

18   did not request subclasses, even though there were three FTS

19   positions, until the Court raised this issue after remand.[10]  There

20   also was never a request to consider whether it would be

21   appropriate to determine exempt versus nonexempt tasks through

22   _____

23   [9] Plaintiff also made this representation in a brief prior to
     that hearing. (Plaintiff's Proposed Trial Management Plan, March
24   27, 2008, at 5.)

25   [10] Although the Court has discretion to divide the class into
     subclasses and considered doing so, the Court determined that it
26   was too late to take this action.  The discovery in this case
     proceeded through the summary judgment stage with an
27   undifferentiated class of all three FTS positions.  As a result,
     the Court did not consider it appropriate to divide the class into
28   subclasses when it was unclear that the evidence would be
     responsive.

1   summary judgment.  The Court has broad discretion to manage class

2   action practice, but this does not relieve a party of its

3   responsibilities to articulate a clear trial plan when requested.

4   Cf. Fed. R. Civ. Pro. 16(a).

5        It is possible through development of reliable common proof

6   and clearer vision for how to try this case that Plaintiff could

7   have avoided this situation.  However, the Court must review the

8   fairness and efficiency of class treatment based on the record

9   before it.  Here, there is a lack of common proof to support a

10  class-wide judgment.  The Court concludes that individualized

11  issues will predominate if this case were to proceed to trial.

12

13       D.   Superiority

14       In addition to the predominance requirement, a class action

15  must be superior to other methods of adjudicating the controversy.

16  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1235 (9th Cir.

17  1996).  The greater the number of individual issues to be

18  litigated, the more difficult it will be for the court to manage

19  the class action. See, e.g., Abed v. A.H. Robins Co., 693 F.2d

20  847, 856 (9th Cir. 1982).

21       As the Court has found that individual issues predominate in

22  this case, a class action is not the superior method for

23  litigating this matter.  Decertification in no way means that FTS

24  who have been improperly classified as exempt cannot pursue their

25  legitimate claims for overtime pay.  However, it does mean that

26  there is not a predominance of common issues to warrant allowing

27  the FTS's claims to go forward as part of a class action.

28  ///

23

E.    Summary

The Court does not take lightly its responsibility to ensure that the class action device serve to protect important rights through collective enforcement.  Nor does the Court consider its decision here to provide any authority to support denying class certification generally.  The Court agrees that the burden at the class certification stage is slight, and that a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied.  This makes sense at an early stage in the litigation. At a later stage, however, a court will sometimes need to reevaluate the certification decision.

As a general rule, this Court does not consider decertification necessary.  Normally, a plaintiff will develop common evidence and a trial management plan with an eye toward maintaining the requirements for a class action.  This is the unusual case where, in spite of earlier indications that class treatment was feasible, the subsequent discovery, motion practice, and trial preparations has revealed that the requirement of predominate common issues is not satisfied.  If there is any lesson to take from the circumstances here, it is that a plaintiff in a class action challenging an employer's exemption policy must think through how to enable a fact-finder to make a decision as to class-wide misclassification.  Common proof of some kind is necessary to support this class-wide determination.  Plaintiff has not provided that proof here.  As a result, the predominance and superiority requirements are not met.

///

///

**IV.   CONCLUSION**

For the foregoing reasons, the Court DECERTIFIES the class. The Court understands that the parties had wanted to brief two contested issues in the event the class was decertified: (1) whether the statute of limitations should be tolled for any length of time during the appeal; and (2) whether counsel for UPS may contact class members following decertification, including during the pendency of any appeal.  The Court orders the parties to enter a stipulation regarding a briefing schedule on these issues.  The statute of limitations shall continue to be tolled and the prohibition on contacts with class members shall remain in effect until the Court resolves these issues.

Plaintiff also requested, in the event of decertification, that the Court stay the trial of Marlo's individual claims and certify any decertification decision for an interlocutory appeal. The Court considers the subject of this Order to "involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation. . . ."  See 28 U.S.C. § 1292(b); McElmurry v. U.S. Bank Natal Ass'n, 495 F.3d 1136, 1139-40 n.3 (9th Cir. 2007).  The Court will wait to stay Marlo's claims in order to consider the parties' briefing on the tolling and class member contact issues mentioned above.

IT IS SO ORDERED.

Dated: May 19, 2008

_____
DEAN D. PREGERSON
United States District Judge