O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL MARLO,                    )   Case No. CV 03-04336 DDP (RZx)
                                  )
              Plaintiff,          )   **ORDER DECERTIFYING THE CLASS**
                                  )
     v.                           )   [Order Setting Decertification
                                  )   Hearing filed on April 3, 2008]
UNITED PARCEL SERVICE, INC.,      )
a corporation,                    )
                                  )
              Defendants.         )
_____   )
                                  )

     This matter is before the Court on the Court's Order Setting a
Decertification Hearing.  (Order Setting Decertification Hearing,
April 1, 2008.)  Michael Marlo ("Plaintiff") filed this action, on
behalf of himself and a class of similarly situated individuals
("the class"), against United Parcel Service, Inc. ("UPS") for
violations of California state law wage-and-hour law.  A class was
certified pursuant to Federal Rule of Civil Procedure 23 on June
10, 2004.  After meeting with the parties on several occasions,
reviewing the many papers submitted by the parties in this action,
and hearing oral argument, the Court finds that it is appropriate
to decertify the class.

///

///

## I. BACKGROUND

In 2003, Plaintiff Marlo filed a class action complaint against UPS that asserted several claims, including failure to pay overtime compensation and failure to provide meal and rest breaks in violation of California law. The Court granted Plaintiff's motion for class certification on June 10, 2004. The class was composed of all UPS employees working in California in the capacity of Full-Time Preload Supervisors, Full-Time Package Center Supervisors (also known as "On Road Supervisors"), and Full-Time Hub Operations Supervisors (collectively "Full-Time Supervisors" or "FTS") from May 6, 1999 to the present. (Order Granting Class Certification, June 10, 2004.)

UPS's Motion For Summary Judgment Or, In the Alternative, Partial Summary Judgment Based On the Executive and Administrative Exemptions ("UPS's Motion For Summary Judgment"), and Plaintiff Marlo's Motion For Partial Summary Judgment As To Executive Exemption and Motion For Partial Summary Judgment As To Administrative Exemption ("Plaintiff's Motions For Partial Summary Judgment") came before the Court on August 17, 2005. On August 23, 2005, the Court granted Defendant's Motion For Summary Judgment and denied Plaintiff's Motions For Partial Summary Judgment, which resolved all the claims presented in the complaint in UPS's favor as to Plaintiff and all members of the class. (Order Granting Defendant's Motion for Summary Judgment, August 23, 2005.)

On October 25, 2007, the Ninth Circuit reversed and remanded the case. Marlo v. UPS, Inc., 254 Fed. Appx. 568 (9th Cir. October 25, 2007). The Ninth Circuit held that Plaintiff had "raised material issues of fact related to whether the FTS

1  'customarily and regularly exercised discretion and independent
2  judgment.'" <u>Id.</u>  This Court held a remand hearing on January 25,
3  2008.  At that hearing, the Court indicated that the case should
4  proceed to trial.  Subsequently, the Court met with the parties on
5  several occasions to discuss various substantive and management
6  issues in preparation for trial, and also received a number of
7  briefs on those issues.  During the course of these sessions, the
8  Court became increasingly concerned that individualized issues may
9  predominate over class-wide issues, and that as a result,
10 Plaintiff's class may no longer satisfy the Rule 23 requirements.
11 The Court thus decided to entertain further briefing from the
12 parties and to have an additional hearing regarding
13 decertification.

14

15 **II.  LEGAL STANDARD FOR CLASS DECERTIFICATION**

16      The district court's order to grant class certification is
17 subject to later modification, including class decertification.
18 <u>See</u> Fed. R. 23(c)(1)(C) ("An order that grants or denies class
19 certification may be altered or amended before final judgment.");
20 <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 n.11 (1978)
21 (describing a court's class certification order as "inherently
22 tentative"); <u>see</u> <u>also</u> <u>Officers For Justice v. Civil Serv. Comm'n</u>,
23 688 F.2d 615, 633 (9th Cir. 1982).  In considering the
24 appropriateness of decertification, the standard of review is the
25 same as a motion for class certification: whether the Rule 23
26 requirements are met.  <u>O'Connor v. Boeing N. Am., Inc.</u>, 197 F.R.D.
27 404, 410 (C.D. Cal. 2000).

28

Rule 23(a) requires that class members demonstrate numerosity, commonality, typicality, and adequate representation of the class interest. Fed. R. Civ. Pro. 23(a); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(b)(3) additionally requires that the court find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Pro. 23(b)(3).

Although certification decisions are not to focus on the merits of a plaintiff's claim, see Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974), a district court reevaluating the basis for certification may consider its previous substantive rulings in the context of the history of the case, O'Connor, 197 F.R.D. at 410, and may "consider the nature and range of proof necessary to establish the [class-wide] allegations." Id. (citing In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)).

**III. DISCUSSION**

Here, the Court considers decertification of a class of approximately 1200 supervisors that work for UPS. In what follows, the Court first mentions the changed circumstances since the initial certification decision, that along with more basic concerns about common proof of misclassification, support considering decertification. The Court then discusses California law on the overtime exemption in the context of a class action lawsuit and

4

examines the burden of proof on misclassification in a class action trial. After a brief review of the parties' evidence in this case, the Court proceeds to the Rule 23 inquiry, which focuses on whether there is commonality and whether there is a predominance of common issues such that class treatment remains appropriate.

A.  Changes Since The Court's Certification Order

In its Order granting class certification, the Court found that the Rule 23(a) and Rule 23(b)(3) requirements had been satisfied. Among its findings, the Court determined that there was commonality and a predominance of common issues based upon class members' similar job duties, UPS's overtime exemption policy, and the predominant legal question was "whether UPS wrongly classified Full Time Supervisors as exempt from overtime compensation." (Order Granting Class Certification, at 6, 13.) Notably, the Court accepted Plaintiff's representation that common proof of misclassification would be offered to determine the class-wide applicability of the exemption.[1]

Plaintiff contends that decertification is inappropriate because circumstances supporting class treatment have not changed: UPS maintains a uniform exemption policy and the evidence shows that this policy is one of misclassification. (Pl.'s Opp'n to Decertification, at 2-3.) However, since certification, the Court has addressed both parties' motions for summary judgment, which required an in-depth review of the evidence that would support each

_____

[1]  (Order Granting Class Certification, at 12.) ("[P]laintiff asserts that the manner in which [FTS] spend their time can be determined without individualized proof.")

5

party's case at trial.  While the Ninth Circuit reversed the Order granting UPS summary judgment, many of the concerns expressed by the Court in that Order remain.  Then and now, the Court was concerned about the class-wide applicability of the evidence.  (See Order Granting Defendant's Motion for Summary Judgment, 9, 14, 15-16, 33, 36.)  In light of the individualized nature of some aspects of the exemption test, this concern has ripened into doubt regarding the continuing efficacy of a class action in this case.

The Court has continued to struggle with these concerns while meeting with the parties in an effort to resolve a number of issues to manage a trial in this action.  Plaintiff's counsel have not adequately explained how they intend to try this case, have not supported their assertion to having representative evidence, and have otherwise failed to take affirmative steps to assist the Court in management of trial.  Ultimately, these meetings with counsel have further confirmed the need to reevaluate the initial certification decision.

Indeed, the Court does not doubt that Plaintiff has shown triable issues of fact whether at least some FTS are exempt or non-exempt employees.  However, in rethinking this case, the Court has come to realize that whether Rule 23 requirements are satisfied, especially commonality and predominance of common issues, and whether a party has common evidence to enable a fact-finder to make a class-wide determination are interrelated inquiries.[2]  In

---

[2] The Court is careful to distinguish this observation from the kind of merits-determination that is disfavored with respect to class certification decisions.  When considering class certification, a court should not weigh the evidence or otherwise evaluate the merits of a plaintiff's class claim.  See Eisen, 417

(continued...)

retrospect, the Court recognizes that its concerns with common proof of class-wide misclassification at the summary judgment stage would best have been directed to the question whether decertification was appropriate.  See <u>O'Brien v. Sky Chefs, Inc.</u>, 670 F.2d 864, 869 (9th Cir. 1982), <u>overruled on other grounds by</u> <u>Atonio v. Wards Cove Packing Co.</u>, Inc., 810 F.2d 1477 (9th Cir. 1987) (finding where "plaintiffs produced no evidence of classwide discrimination" that "decertification of the class was more appropriate than summary judgment against the class").

Having explained the changed circumstances in this case and before turning to the Rule 23 inquiry, the Court will discuss California law on the overtime exemption in a class action.

B.   California's Executive Exemption in Class Actions

California law requires that all employees receive overtime compensation and authorizes civil actions for the recovery of unpaid compensation.  California Labor Code §§ 510, 1194.[3] California law exempts from overtime pay those persons employed in executive or administrative capacities.  The executive exemption applies to any employee:

---

[2](...continued)
U.S. at 178.  However, this principle does not prevent a court from comparing the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification.

[3] Under section 3(A) of the Industrial Welfare Commission ("IWC") Wage Order, employees must be compensated at 1.5 times the employee's normal rate of pay for all overtime worked.  IWC Wage Order No. 9, codified at 8 California Code of Regulations ("C.C.R.") § 11070.

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. . . .

8 C.C.R. § 11070(1)(A)(1).

Wage-and-hour class actions challenging an employer policy of exempting employees have been certified based upon common proof of misclassification. See, e.g., Sav-on Drug Stores, Inc., 34 Cal. 4th 319 (2004); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474 (E.D. Cal. 2006); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005). Some courts, on the other hand, have denied certification of classes challenging misclassification when the evidence showed individual differences in employee duties such that individualized issues would predominate over class-wide determinations. See, e.g., Sepulveda v. Walmart Stores, 237 F.R.D. 229, 249 (C.D. Cal. 2006); Jiminez v. Domino's Pizza, Inc., 238 F.R.D. 241, 252 (C.D. Cal. 2006); Dunbar v. Albertson's, Inc., 141 Cal. App. 4th 1422 (2006).

The burden of proof in a class action trial on the executive exemption has been an issue of dispute in this case addressed several times at hearings and meetings with the parties. Under California law, the employer bears the burden of demonstrating

that an employee is exempt from the Labor Code's overtime

requirements.  <u>Nordquist v. McGraw-Hill Broadcasting Co., Inc.</u>, 32

Cal. App. 4th 555, 562 (1995).  However, in order to maintain a

class action challenging the overtime exemption, a plaintiff must

have common evidence to support a legal theory of

misclassification, either "that deliberate misclassification was

defendant's policy or practice" or similarly, that "classification

based on job descriptions alone resulted in widespread de facto

misclassification."  <u>Sav-On Drug Stores, Inc. v. Superior Court</u>,

34 Cal. 4th 319, 329 (2004).[4]  A class action is appropriate if

"plaintiffs are able to demonstrate pursuant to either scenario

that misclassification was the rule rather than the exception. . .

."  <u>Id.</u> at 330.

      The subject of the dispute over the burden of proof has

concerned whether there is any difference between an individual

case, where it is well-established that an employer has the burden

of proving that the overtime exemption was appropriate, and a

class action challenging an employer's decision to classify as

exempt a group of employees.  UPS has argued that Plaintiff in

bringing this case as a class action has the burden of ultimately

proving misclassification on a class-wide basis.  UPS has also

suggested that trial be organized in a similar fashion to pattern-

and-practice discrimination cases, with Plaintiff having to make

_____

      [4] Although Rule 23 governs certification of a state law class
action in federal court, and the California Supreme Court in <u>Sav-On</u>
was asked whether class certification was appropriate under
California class action requirements, the Court and the parties
here have considered <u>Sav-On</u> persuasive authority with respect to
class actions challenging misclassification of employees as exempt
under California wage-and-hour law.

out a prima facie case, UPS providing evidence to show that its
exemption decision was legitimate, and Plaintiff having the
ultimate burden of proving misclassification.  (Joint Statement
Regarding Trial Management Issues, at 8-11, 18.)

For some time as the Court has met with the parties regarding
trial management, Plaintiff's position on this issue was unclear.
For example, Plaintiff has simultaneously argued that "Plaintiff
bears the ultimate burden of proving that [UPS] violated
California law by not paying overtime on a class wide basis to
[FTS]" and that "[UPS] must prove the affirmative defense [of the
exemption] on a class-wide basis."  These were statements by
Plaintiff appearing in the same document, that is, the parties'
Joint Statement of Regarding Trial Management Issues.  (<u>Compare</u>
Joint Statement Regarding Trial Management Issues, at 3 & 5, 14
<u>with</u> <u>id.</u> at 4, 5.)  When the Court asked for clarification during
its meetings with counsel, it had the impression that Plaintiff
agreed it had the burden of proving class-wide liability.

However, since that time and most recently in its briefing on
decertification, Plaintiff has argued that an employer's burden of
proof in an individual case also applies in the context of a class
action – UPS must show that it properly classified the FTS as
exempt on a class-wide basis.  (Pl. Opp'n to Decertification, at
9-15.)  Moreover, Plaintiff has suggested it would present a prima
facie case that UPS classified the FTS as exempt and did not pay
overtime, a prima facie case to which UPS was willing to
stipulate.  Then UPS would have the burden of proving that it
properly applied the exemption on a class-wide basis.  (<u>Id.</u> at 19-
20.)

1    The Court finds that Plaintiff has the ultimate burden of
2  proving misclassification at a class action trial.  A plaintiff
3  bringing a class action normally has the ultimate burden of
4  proving class-wide liability at trial.  <u>See, e.g.</u>, <u>Teamsters v.</u>
5  <u>United States</u>, 431 U.S. 324, 336 (1977).  Because Plaintiff has
6  brought a class action challenging UPS's exemption of FTS as a
7  policy of misclassification, Plaintiff must be "able to
8  demonstrate pursuant to either scenario that <u>misclassification was</u>
9  <u>the rule rather than the exception</u>. . . ." <u>Sav-On Drug Stores,</u>
10  <u>Inc.</u>,  34 Cal. 4th at 330 (emphasis added).  Where, as here,
11  Plaintiff has sought the benefit of class treatment, he too must
12  accept its burden.  This burden may be met with common proof of
13  misclassification.  <u>See</u> <u>id.</u>
14    The Court finds this approach consistent with the rule that
15  an employer has the burden of proving the exemption as an
16  affirmative defense in an individual case.  As to any individual,
17  UPS would have the burden of proving the exemption was proper.
18  However, as to a class-wide finding of misclassification which is
19  the result Plaintiff seeks here, Plaintiff would have the ultimate
20  burden of showing misclassification on a class-wide basis.  This
21  does not mean to succeed at trial, or to otherwise maintain a
22  class action, that Plaintiff is required to show that all or
23  substantially all FTS were misclassified.  Rather, Plaintiff must
24  show that it is more likely than not that UPS's exemption as
25  applied to FTS was a policy or practice of misclassification.  In
26  any event, a plaintiff must provide common evidence of
27  misclassification to maintain class certification and proceed with
28

a class action trial.  See Sav-On Drug Stores, Inc.,  34 Cal. 4th
at 330-31.

C.   Predominance

Here, the decertification inquiry focuses on whether the Rule
23(a) commonality and Rule 23(b)(3) predominance requirements have
been met.[5]  At a broad level of generality, the commonality
requirement remains satisfied because there is the common question
whether the FTS were properly classified as exempt employees.  See
Sec. Harris v. Palm Soring Alpine Estates, Inc., 329 F.2d 909, 914
(9th Cir. 1964) (commonality requires only that class members be
similarly situated in sharing common questions of law or fact).
Although the Court questions the satisfaction of commonality, the
Court addresses these concerns in its predominance inquiry and
will not further consider the element of commonality.

The predominance requirement demands a rigorous inquiry that
"tests whether proposed classes are sufficiently cohesive to
warrant adjudication by representation."  Amchem Products, Inc. v.
Windsor, 521 U.S. 591, 623-24 (1997).  To satisfy this
requirement, it is not enough simply that common questions of law
or fact exist; predominance is a comparative concept that calls
for measuring the relative balance of common issues to individual
ones.  See id.  "Implicit in the satisfaction of the predominance
test is the notion that the adjudication of common issues will
help achieve judicial economy."  Zinser v. Accufix Research Inst.,

---

[5] There is no serious dispute that the other Rule 23(a)
requirements are satisfied.

<u>Inc.</u>, 253 F.3d 1180, 1189 (9th Cir. 2001) (citing <u>Valentino v.</u>

<u>Carter-Wallace Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996)).

        1.   <u>The Parties' Evidence</u>[6]

        a.   <u>Plaintiff</u>

Plaintiff argues that each type of FTS - Pre-Load, On-Road, and Hub - perform similar duties across California, that UPS classifies the FTS as exempt based their job titles, and that UPS maintains a uniform classification policy. Plaintiff concludes that commonality, as well as predominance of common issues, is satisfied and that this case should proceed as a class action.

At the time of summary judgment, Plaintiff had submitted Plaintiff's declaration along with the declarations of approximately ten FTS employees. The declarations contained similar statements to the effect that those employees did not have authority to hire or fire others, and that they did not exercise independent discretion or judgment in discharging their job duties. (<u>See, e.g.</u>, Marlo Decl. in Opp'n UPS's MSJ 11, 13; Flynn Decl. 7; Goudie Decl. 7; Kemp Decl. 7; Rice Decl. 7.) During hearings before the Court, Plaintiff has represented that more declarations have been taken, and also, that a significant number of individuals would testify at trial that they were misclassified.

Other than the individual testimony, Plaintiff relies heavily on a telephone survey conducted by Mary Spain ("Spain survey") of Opinion Resources, Inc. The Spain survey asked 160 FTS various

---

[6] The Court extensively described the parties' evidence in its prior Order on summary judgment. (Order, 10-16.) The Court, therefore, offers a brief review as it pertains to decertification.

questions regarding performance of their job duties.  Plaintiff
has submitted samples of UPS's standardized procedures, including
the UPS's Job Breakdown Analysis ("JBA") forms describing the
FTS's job duties.  Plaintiff also has offered UPS's Employee
Relations Index ("ERI") survey, where UPS employees may provide
anonymous comments while responding to UPS's annual employee
survey, although it is unclear to what extent Plaintiff still
relies on the ERI comments since this evidence was not discussed
in response to the Court's inquiries at a recent hearing.  (See
Tr. Status Conf. Re: Joint Statement of Trial Management Issues,
March 28, 2008.)

b.   UPS

UPS contends that a standard policy alone does not support
class treatment in this context, where the exemption test involves
an individualized inquiry regarding a particular FTS's exercise of
discretion and judgment and how a particular FTS spends their
time, and determinations will vary based upon a number of
circumstances.  UPS further contends that Plaintiff lacks common
evidence representative of a class of FTS employees; at best, UPS
argues, Plaintiff is able to show that some FTS are improperly
exempt, while others are properly exempt.  UPS concludes that
Plaintiff has not come forward with class-wide evidence, which
counsels against maintenance of the class action.

UPS has submitted declarations and depositions of FTS and
managers that, contrary to Plaintiff's declarations, maintain FTS
do in fact exercise independent discretion and judgment, are
primarily engaged in exempt work, and otherwise satisfy the

14

elements for the overtime exemption.  UPS would call a number of the FTS and managers as witnesses at trial.  UPS has also provided several additional sources of evidence, including an expert Job Activity Analysis to identify employees' duties and analyze the nature of those duties, a field survey interviewing employees, a time-motion study recording the job activities of FTS, an expert analysis of the amount of time that FTS spent on particular activities, and quality performance reviews as evidence of UPS's expectations regarding work performance.

### 2.  <u>Analysis</u>

The existence of a uniform policy classifying the FTS as exempt does not necessarily establish that the policy was misclassification.  It is possible to have a classification policy that properly classifies some employees as exempt and improperly classifies others as exempt.  <u>See, e.g.</u>, <u>Dunbar</u>, 141 Cal. App. 4th at 1427.  An exemption policy is different from a facially unconstitutional policy of discrimination, for example, in that something more must be shown to establish that the policy was wrongful.  In other words, a class-wide determination of misclassification generally cannot be provded from the existence of an exemption policy alone.

To show that an exemption policy resulted in widespread misclassification, there has to be some common proof that allows a fact-finder to make a class-wide determination.  <u>Sav-On</u>, 34 Cal. 4th at 329-330.  In the <u>Sav-On</u> decision, the California Supreme Court explained that class certification should be supported by "substantial evidence" of misclassification, <u>id.</u> at 329, referring

to a plaintiff's "common proof" or "common evidence," id. at 330 n.4, 336. The need for common proof recognizes that a plaintiff's evidence should have some common application to class members in order to provide a basis for the jury to find that "misclassification was the rule rather than the exception." See id. at 330. Otherwise, there is a risk that without common proof the inquiry will raise individualized issues since that inquiry focuses "first and foremost, [on] how the employee actually spends his or her time." Ramirez v. Yosemite Water Co., 20 Cal.4th 785, 802 (1999).

The need for common proof dovetails with the Rule 23 requirements of commonality and predominance. One of the primary goals of the class device is to adjudicate the claims of a large group of similarly situated individuals when it is efficient and manageable to do so. The commonality and predominance requirements are designed to promote the goals of efficiency and judicial economy by focusing on whether a class action makes sense based upon the balance of common and individual issues. The presence of some individualized issues does not preclude class treatment. However, when individualized issues or determinations become central to a case, the class action no longer advances the efficiency and economy for which it was intended.

One way this can happen is when a plaintiff brings a claim on a class-wide basis that raises individualized issues, but fails to provide common proof that would have allowed a jury to determine those issues on a class-wide basis. This is Plaintiff's failure in this case – Plaintiff has not provided common proof to support a class-wide judgment as to liability. In the absence of common

proof, the jury may have sufficient evidence to make judgments as
to particular individuals, but lacks a basis to extrapolate from
those findings to a class-wide judgment.[7] This is a situation
where a class action is neither efficient nor appropriate as the
record is limited to evidence of individual claims. As there is
no common proof of misclassification in this case, there is no
basis to adjudicate class-wide misclassification and the result is
that individualized issues predominate over common ones.

At the March 28 hearing, the Court asked that Plaintiff's
counsel describe its evidence in this case. Plaintiff's counsel
indicated that a main source of the class's evidence was the Spain
survey. (Transcript of March 28 Hearing ("Hearing Tr."), at 56.)
The Court proceeded to ask Plaintiff's counsel whether the Spain
survey was common evidence. Specifically, the Court asked whether
Mary Spain would testify that the survey was representative and
that it was statistically significant. Plaintiff's counsel said
that she would. (Hearing Tr. 50:3-9, 49:5-11.)

However, Plaintiff counsel's statements were incorrect.
Contrary to Plaintiff counsel's representations, Mary Spain stated
in her deposition that she did not know whether the survey sample
was representative, did not do anything to evaluate whether the
sample was representative, and was unaware of any guidelines for
ensuring that a survey provides representative evidence. (Spain
Depo. 122:21-124:8, 132:22-133:3, 36:25-37:16; see also Supplement

---

[7] Common proof could involve simple reference to policies in
some cases, but will often require individual employee testimony,
expert testimony, generalized surveys, statistical analyses, or
some combination of all this evidence. The type of common proof
needed will vary based upon the factual circumstances and alleged
legal wrong.

to Defendant UPS's Rebuttal to Representations Made by Plaintiff, April 1, 2008.)  In fact, Spain had nothing to do with the survey's design – Plaintiff's counsel wrote the survey questions. (Spain Depo. 74:25-75:4, 67:16-18, 98:14-20.)

Plaintiff also retained Beth Chung-Herrera, an associate professor of business administration, to review the survey questions for bias.  However, she too had no background in survey methodology, no knowledge of the purpose of the survey or facts of this case, and did not have any role in designing the survey. (Chung-Herrera Depo. 26:12-18, 28:21-29:19, 47:25-48:18, 130:21-22, 132:12-133:6; Declaration of Chung-Herrera ¶ 5.)  When the Court requested briefing on decertification that specifically identified its concerns with the apparently unrepresentative nature of the Spain survey, the Plaintiff's brief did not discuss - nor even mention - the Spain survey.  (See Pl.'s Opp'n Decertification.)  Here, Spain and Chun-Herrera are unable to testify that the Spain survey is representative.

Moreover, the Spain survey is not "the product of reliable principles and methods." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  The parties split the class members into two random samples.  This, however, does not establish the reliability of surveys conducted from those samples.  Even when one begins with a random sample, one should take measures to assure that nonresponses are random and provide analysis of the reasons of nonresponse.  See Federal Judicial Ctr., Reference Manual on Scientific Evidence 245-46 (2000 ed.); see also Federal Judicial Ctr., Reference Manual on Scientific Evidence 367-369 (2005-2006 ed.)  Here, of the 614-person sample, Spain conducted

interviews of 160 individuals.  Spain did not analyze the reasons
for nonresponse, nor did the survey inquire of the characteristics
of the respondents to allow such analysis.

The survey suffers from additional flaws, including the fact
that Plaintiff's counsel who has not claimed to be an expert on
survey methodology appears to have designed the questions.  Even
if the Court were to stretch the rules of reliability and permit
this evidence to be presented to a jury, the Spain survey asked
vague and ambiguous questions that largely did not address
elements of the exemption and thus has essentially no probative
value.[8]  Given its methodological and design problems, the Spain
survey cannot qualify as common proof of misclassification because
it is unrepresentative, unreliable, and has essentially no
probative value.

Plaintiff's other evidence does not fill the gap.  The ERI
comments, while perhaps of some anecdotal value, are not
representative of the class.  The ERI comments appear in an annual
survey conducted by UPS.  The ERI comments are discretionary
responses to the question "Would you like to type in a comment?"
There is no suggestion that UPS follows a reliable methodology in
conducting this survey.  What's more, the survey is not limited to
FTS, and while it is known whether a particular respondent is a
"Supervisor," it is unclear whether any particular "Supervisor"
respondent is one of the FTS employees in the class or otherwise.

_____

[8] The Court discussed the flaws with the Spain survey's
questions at length in its prior Order on Summary Judgment.
(Order, at 31-32.)  The Court need not recount those problems here
because the focus in considering maintenance of the class is
whether the evidence is representative.

The JBA forms, which describe FTS job duties, provide some indication of UPS's expectations, but again, the focus of the exemption test is the employee's actual work activities and these job descriptions simply do not establish what FTS actually do.

Equally important, there is no indication that Plaintiff's evidence addresses the "primarily engaged" element of the exemption, and specifically the week-by-week aspect of the analysis. The regulation offers the following guidance for determination whether an employee is "primarily engaged" in exempt or non-exempt work: "The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." 8 C.C.R. § 11070(1)(A)(1) (emphasis added). In California, an employee is "primarily engaged" in exempt work if more than one-half that employee's work-time in a workweek is devoted to exempt activities. Cal. Lab. Code § 515(e). The Court does not suggest that a showing of the amount of time each individual spends on exempt versus nonexempt work is necessarily required to maintain a class action. A plaintiff could present common proof on this issue. See Sav-On, 34 Cal. 4th at 336-37. Here, Plaintiff has no common proof to show whether FTS were engaged in exempt or nonexempt work, and also has not presented a plan for how to proceed with this issue at trial.

Plaintiff's evidence at trial primarily would be individual FTS's testimony. To counter this testimony, UPS would offer the

20

The JBA forms, which describe FTS job duties, provide some indication of UPS's expectations, but again, the focus of the exemption test is the employee's actual work activities and these job descriptions simply do not establish what FTS actually do.

Equally important, there is no indication that Plaintiff's evidence addresses the "primarily engaged" element of the exemption, and specifically the week-by-week aspect of the analysis. The regulation offers the following guidance for determination whether an employee is "primarily engaged" in exempt or non-exempt work: "The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." 8 C.C.R. § 11070(1)(A)(1) (emphasis added). In California, an employee is "primarily engaged" in exempt work if more than one-half that employee's work-time in a workweek is devoted to exempt activities. Cal. Lab. Code § 515(e). The Court does not suggest that a showing of the amount of time each individual spends on exempt versus nonexempt work is necessarily required to maintain a class action. A plaintiff could present common proof on this issue. See Sav-On, 34 Cal. 4th at 336-37. Here, Plaintiff has no common proof to show whether FTS were engaged in exempt or nonexempt work, and also has not presented a plan for how to proceed with this issue at trial.

Plaintiff's evidence at trial primarily would be individual FTS's testimony. To counter this testimony, UPS would offer the

testimony of managers to discuss the job duties of Plaintiff's witnesses and testimony from FTS employees suggesting that they are exempt. The exempt/non-exempt inquiry focuses on what an employee actually does. The declarations and deposition testimony of FTS submitted by the parties suggest variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases. Without more than this individual testimony, the Court cannot conceive how the overtime exemption will be presented to the jury as a common issue for class-wide adjudication, as opposed to a number of individualized inquiries. There is a significant risk that the trial would become an unmanageable set of mini-trials on the particular individuals presented as witnesses.

Plaintiff's evidence is essentially individual testimony and an exemption policy. Under the circumstances in this case, where Plaintiff alleges that 1200 FTS have been misclassified as exempt employees, Plaintiff had to provide common evidence to support extrapolation from individual experiences to a class-wide judgment that is not merely speculative. Plaintiff has not come forward with common proof sufficient to allow a fact-finder to make a class-wide judgment as to the FTS. Moreover, none of this evidence addresses the "primarily engaged" prong of the exemption. Because Plaintiff lacks common evidence, the Court has no confidence that the jury will be able to do anything but speculate as to a class-wide determination. Accordingly, under the particular facts of this case, the Court finds that individual issues predominate over common ones. As a result, the Court decertifies the class.

The result in this case could have been different.  A
plaintiff that offers reliable common evidence should not face
decertification.  Here, Plaintiff has not done so.  For the past
several months, the Court inquired of Plaintiff's counsel how they
intended to try this case.  On several occasions, the Court
received unsatisfactory answers.  Some of those inquiries have
been recounted here, including Plaintiff counsel's statements
regarding the Spain survey.  As an additional example, Plaintiff
stated at the March 28 hearing that after proving class-wide
liability, there would be a damages phase where UPS would "have
the opportunity to . . . knock out whoever they believe [should
not properly] receive the award."[9] (Tr. 24:16-23.)  The Court
questioned the need for the class if liability would have to be
tried a second time at the damages phase, and although Plaintiff's
counsel retracted this position, this exchange illustrates that
Plaintiff's counsel did not conceptualize the trial management of
common issues through the class mechanism.  Moreover, Plaintiff
did not request subclasses, even though there were three FTS
positions, until the Court raised this issue after remand.[10]  There
also was never a request to consider whether it would be
appropriate to determine exempt versus nonexempt tasks through

---

[9] Plaintiff also made this representation in a brief prior to
that hearing.  (Plaintiff's Proposed Trial Management Plan, March
27, 2008, at 5.)

[10] Although the Court has discretion to divide the class into
subclasses and considered doing so, the Court determined that it
was too late to take this action.  The discovery in this case
proceeded through the summary judgment stage with an
undifferentiated class of all three FTS positions.  As a result,
the Court did not consider it appropriate to divide the class into
subclasses when it was unclear that the evidence would be
responsive.

summary judgment. The Court has broad discretion to manage class action practice, but this does not relieve a party of its responsibilities to articulate a clear trial plan when requested. Cf. Fed. R. Civ. Pro. 16(a).

It is possible through development of reliable common proof and clearer vision for how to try this case that Plaintiff could have avoided this situation. However, the Court must review the fairness and efficiency of class treatment based on the record before it. Here, there is a lack of common proof to support a class-wide judgment. The Court concludes that individualized issues will predominate if this case were to proceed to trial.


D. Superiority

In addition to the predominance requirement, a class action must be superior to other methods of adjudicating the controversy. Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1235 (9th Cir. 1996). The greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action. See, e.g., Abed v. A.H. Robins Co., 693 F.2d 847, 856 (9th Cir. 1982).

As the Court has found that individual issues predominate in this case, a class action is not the superior method for litigating this matter. Decertification in no way means that FTS who have been improperly classified as exempt cannot pursue their legitimate claims for overtime pay. However, it does mean that there is not a predominance of common issues to warrant allowing the FTS's claims to go forward as part of a class action.

///

1     E.   <u>Summary</u>

2     The Court does not take lightly its responsibility to ensure

3 that the class action device serve to protect important rights

4 through collective enforcement.  Nor does the Court consider its

5 decision here to provide any authority to support denying class

6 certification generally.  The Court agrees that the burden at the

7 class certification stage is slight, and that a court need only be

8 able to make a reasonable judgment that Rule 23 requirements are

9 satisfied.  This makes sense at an early stage in the litigation.

10 At a later stage, however, a court will sometimes need to

11 reevaluate the certification decision.

12     As a general rule, this Court does not consider

13 decertification necessary.  Normally, a plaintiff will develop

14 common evidence and a trial management plan with an eye toward

15 maintaining the requirements for a class action.  This is the

16 unusual case where, in spite of earlier indications that class

17 treatment was feasible, the subsequent discovery, motion practice,

18 and trial preparations has revealed that the requirement of

19 predominate common issues is not satisfied.  If there is any

20 lesson to take from the circumstances here, it is that a plaintiff

21 in a class action challenging an employer's exemption policy must

22 think through how to enable a fact-finder to make a decision as to

23 class-wide misclassification.  Common proof of some kind is

24 necessary to support this class-wide determination.  Plaintiff has

25 not provided that proof here.  As a result, the predominance and

26 superiority requirements are not met.

27 ///

28 ///

## IV. CONCLUSION

For the foregoing reasons, the Court DECERTIFIES the class. The Court understands that the parties had wanted to brief two contested issues in the event the class was decertified: (1) whether the statute of limitations should be tolled for any length of time during the appeal; and (2) whether counsel for UPS may contact class members following decertification, including during the pendency of any appeal. The Court orders the parties to enter a stipulation regarding a briefing schedule on these issues. The statute of limitations shall continue to be tolled and the prohibition on contacts with class members shall remain in effect until the Court resolves these issues.

Plaintiff also requested, in the event of decertification, that the Court stay the trial of Marlo's individual claims and certify any decertification decision for an interlocutory appeal. The Court considers the subject of this Order to "involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the litigation. . . ." See 28 U.S.C. § 1292(b); McElmurry v. U.S. Bank Natal Ass'n, 495 F.3d 1136, 1139-40 n.3 (9th Cir. 2007). The Court will wait to stay Marlo's claims in order to consider the parties' briefing on the tolling and class member contact issues mentioned above.

IT IS SO ORDERED.

Dated: May 19, 2008

_____
DEAN D. PREGERSON
United States District Judge

25