```
                                    FILED
                          CLERK, U.S. DISTRICT COURT

                              APR 2 2 2009

                        CENTRAL DISTRICT OF CALIFORNIA
                        BY              JAC      DEPUTY
```

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARLO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC., a corporation; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.: CV03-4336 DDP (RZx)<br><br>FINAL PRE-TRIAL CONFERENCE ORDER<br><br>Pre-Trial Conference<br>Date:        April 21, 2009<br>Time:        10:00 a.m.<br>Judge:       Hon. Dean D. Pregerson<br><br>Trial Date: May 5, 2009 |

Following pretrial proceedings, pursuant to Rule 16, F.R.C.P. and L.R. 16, IT IS ORDERED:

1.     The parties are: Plaintiff Michael Marlo and Defendant United Parcel Service, Inc.

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

-1-

LEGAL_US_W # 61535112.2

1  The pleadings which raise the issues are:  Plaintiff's First Amended
2  Complaint and Defendant's Answer to First Amended Complaint.[1]

3      2.      Federal jurisdiction and venue are invoked upon the following
4  grounds:  Diversity of citizenship under 28 U.S.C. § 1332.  This is a civil action
5  between citizens of different states and the matter in controversy exceeds the sum
6  of $75,000, exclusive of interests and costs.  Plaintiff admits these facts requisite to
7  federal jurisdiction.

8

9      3.      The trial is estimated to take eight trial days.

10     4.      The trial is to be a jury trial, with the exception of Plaintiff's
11 claim for violation of California Business & Professions Code Section 17200 et
12 seq. for which a jury trial is not available.[2]  If the jury enters a verdict in Plaintiff's
13 favor on Plaintiff's other claims, the parties will submit proposed findings of fact
14 and conclusions of law they request the Court to make with respect to Plaintiff's
15 claim for violation of the California Unfair Competition Act (i.e. Bus. & Prof.
16 Code Section 17200 et seq., hereinafter "UCL").

17

18     At least five (5) court days prior to the trial date each party shall file
19 and serve by e-mail, fax, or personal delivery:  (a) proposed jury instructions as
20 required by Local Rule 51-1; and (b) any special questions requested to be asked
21 on voir dire.

22

23

24 [1] The parties stipulated that UPS's Answer to Plaintiff's initial Complaint would be
25 deemed its Answer to Plaintiff's First Amended Complaint.

26 [2] As a result, Defendant submits that Plaintiff's expert report, to the extent it is
27 presented or argued to the jury, cannot include alleged damages amounts for the
time period before May 6, 2000.
28

5.    The following facts are admitted and require no proof:

(a)    Plaintiff is a former UPS employee who worked as a Hub, Preload or On Road full-time supervisor (collectively, "FTS") from October 1, 2000³ until November 12, 2008.

(b)    During the same time period, UPS classified Plaintiff as an exempt employee.

(c)    During the same period, Plaintiff received a salary of at least twice the California minimum wage for full-time employment.

(d)    During the same period, Plaintiff customarily and regularly directed the work of two or more other employees.

(e)    Except as noted in the footnote below, Plaintiff held the following positions, beginning on the dates stated below:

| Date | Position | Location |
|------|----------|----------|
| 1/2/87 | Loader/Unloader | Van Nuys |

---

³ Plaintiff asserts and will present evidence at trial that he was in fact a hub supervisor with UPS as of May 6, 1999, pursuant to the Court's Order Granting in Part and Denying in Part Defendant's Motion in Limine No. 9 (at page 17, lines 18-24); and therefore this admitted "fact" sets the minimum amount of time Plaintiff was in a qualifying position, subject to proof at trial that Plaintiff was in fact in a qualifying position for a longer period (i.e. beginning May 6, 1999). In managing the trial, the Court should be mindful of the statutory break at May 6, 2000, before which liability is for the Court, not the jury. In addition, UPS submits that the recovery of any overtime prior to January 1, 2000, cannot include daily overtime, because daily overtime was not available under California law until January 1, 2000.

FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

| | | |
|---|---|---|
| 4/1/88 | Hub PTS | Van Nuys |
| 10/30/90 | Driver | Van Nuys (Toluca) |
| 7/17/91 | Hub FTS | Van Nuys |
| 8/28/94 | Special Assignments | Texas |
| 9/26/94 | Hub FTS | Van Nuys |
| 3/1/99 | Retention FTS or Hub FTS[4] | WLA District |
| 10/1/00 | Hub FTS | Van Nuys |
| 9/4/01 | On Road FTS | Van Nuys (Sierra) |
| 10/1/02 | Preload/On Road FTS | Van Nuys (Sierra) |
| 3/1/03 | Preload FTS | Van Nuys (Sierra) |
| 3/12/03 | Leave of Absence | |
| 6/30/03 | Preload FTS | Van Nuys |
| 7/21/03 | On Road FTS | Ridgecrest/Lancaster |
| 6/22/04 | On Road FTS | Lancaster |
| 2/17/05 | Preload FTS | Lancaster |
| 7/12/06 | On Road FTS | San Fernando (Newhall) |

---

[4] The parties dispute which position Plaintiff held during this time, and will present evidence on this issue at trial.

-4-

FINAL PRE-TRIAL CONFERENCE ORDER

6.      The following facts, though stipulated, shall be without prejudice to any evidentiary objection:  None.

7.      Claims and Defenses:

Plaintiff's Claims:

(a)      Plaintiff plans to pursue the following claims against Defendant at trial:

(i)      Failure to compensate Plaintiff for all hours worked under IWC Wage Order 9 and Labor Code Section 1198;

(ii)      Failure to pay overtime compensation under IWC Wage Order 9 and Labor Code Section 510;

(iii)      Failure to pay for missed meal and rest periods under IWC Wage Order 9 and Labor Code Section 226.7;

(iv)      Violation of California Business and Professions Code Section 17200 et seq. (California's "UCL") based on alleged violations (i)-(iii), above.[5];

(b)      The elements required to establish Plaintiff's claims are:

(i)      Elements of a Labor Code Section 1198 claim:

_____

[5] Plaintiff's Fifth Cause of Action seeks Declaratory Relief, a claim which has become moot for purposes of this trial (only) as a result of UPS' termination of Plaintiff's employment on November 12, 2008.  However, provided there is an appeal of the judgment in this matter, Plaintiff will seek re-certification of the class action by the Ninth Circuit, at which point the claim for injunctive relief will once again be applicable.

1   Plaintiff asserts that, to establish a claim under Labor Code § 1198,
2   Plaintiff must prove (1) that he was employed by UPS; (2) that he worked over
3   eight hours in any one workday or over 40 hours in one workweek; (3) that he was
4   not paid compensation for some hours worked; and (4) the amount of his damages.
5   Defendant asserts that Plaintiff cannot recover "straight time" pay for "overtime"
6   hours under Labor Code Section 1198.

7
8               (ii)      Elements of a Labor Code Section 510 claim:

9       Plaintiff asserts that to establish a claim under Labor Code § 510,
10  Plaintiff must prove (1) that he was employed by UPS; (2) that he worked over
11  eight hours in any one workday or over 40 hours in any one workweek; (3) that he
12  was not paid overtime compensation; and (4) the amount of his damages.

13
14              (iii)     Elements of a Labor Code Section 226.7 claim:

15      Plaintiff asserts that, to establish a claim under Labor Code § 226.7,
16  Plaintiff must prove (1) that either (a) UPS did not provide Plaintiff an opportunity
17  to take one meal break of at least 30 minutes on the workdays that he worked more
18  than five hours, or two meal breaks of at least 30 minutes on the workdays that he
19  worked more than 10 hours;[6] or (b) UPS did not authorize and permit Plaintiff to
20  take a 10-minute rest period for every four hours worked; and (2) the value of one
21  additional hour of pay at the regular rate of compensation that he is owed for any
22  day on which a meal and/or rest period violation occurred since January 1, 2001.[7]

23
24

25  [6] UPS asserts that Plaintiff also must prove that he did not waive the meal periods.
26
27  [7] The parties have briefed and the Court will determine prior to the commencement
    of trial of this matter whether Plaintiff will be entitled to recover one hour of
28  compensation for each day a meal break violation occurs, as well as each day one

(iv)     Elements of a UCL claim:

To establish a claim under the UCL, Plaintiff must prove a violation of some underlying law. *See, e.g., Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505-06 (1999) (where a violation of Section 17200 is premised on the allegation that a practice is "unlawful" under some other law, a defense to underlying law is also defense to Section 17200 claim).

Plaintiff contends that UPS engaged in unlawful business practices by failing to compensate him for overtime and for missed meal and rest periods in violation of California law. Plaintiff contends he is entitled to recover the unpaid wages as restitution, which are recoverable under the applicable four year statute of limitations, pursuant to Bus. & Prof. Code Section 17208.

(v)     Elements for declaratory relief:

For purposes of this trial only, Plaintiff's claim for declaratory relief is moot, as a result of the termination of Plaintiff's employment on November 12, 2008. However, should the judgment in this matter be appealed, Plaintiff will seek re-certification of the class from the Ninth Circuit, which will necessarily include the application of the claim for declaratory relief on behalf of class members.

(c)     In brief, the key evidence Plaintiff relies on for each of the claims is:

or more rest break violations occur (i.e. a total potential recovery of two hours of compensation for each day each is missed) or if Plaintiff will only be entitled to recover one hour of compensation for each day a rest or meal violation occurs (i.e. a total potential recovery of one hour of compensation for each day either a rest or meal break violation occurs, regardless of the number of the violations that occur in one day).

-7-

LEGAL_US_W # 61535112.2

(i)      Key evidence for Labor Code Sections 510 and 1198 claims:

The evidence will consist of witness testimony and documents that will show that during the relevant time period, Plaintiff did not: 1) perform duties and responsibilities that involved the management of the enterprise in which he was employed or of a customarily recognized department or subdivision of the enterprise in which he was employed; 2) have the authority to hire or fire other employees, nor were his suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change in status of other employees were given particular weight; 3) customarily and regularly exercised discretion and independent judgment; 4) perform duties and responsibilities that involve the performance of office or non-manual work directly related to management policies or general business operations of his employer; 5) either (a) regularly and directly assist an employee in a bona fide executive or administrative capacity, or (b) performed under only general supervision work along specialized or technical lines, requiring special training, experience, or knowledge, or (c) executed under only general supervision special assignments and tasks; and 6) engage in duties that met the test of the exemption more than 50% of the time.  For example:

- The manager was the individual in charge of the center.  Marlo worked with the other supervisors assigned to his center at the direction of the manager. See e.g. Marlo Depo Transcript (hereinafter "Tr.") 264:20-22  (did not make work assignments to hourly employees); Tr. 414:9-18 (UPS dictates how Marlo is to train on the HABITS form); Tr. 504:11-18 (20-30 supervisors at one time in the Hub); Tr.82:23-83:1 ("I would supervise the Northridge drivers indirectly. I got help with that."); Tr. 84:18-23 (I don't dispatch

drivers. I have no say in what a driver does, who takes what, who does this."); Tr. 88:4-16 (Marlo worked with the other supervisors in the center when a sick call came in to determine the available driver with the appropriate knowledge to do the route); Tr. 91:8-13; 92:1-10 (Marlo had no discretion in assigning drivers to routes); Tr. 98:5-7; 318:7-11 (staffing was dictated to supervisors, which sometimes forced them to go on road); Tr. 716:4-11 (SPOHR measurements are for entire center, not Marlo); Tr. 847:2-12 (Marlo talked with another supervisor's driver about an attendance issue, while the other supervisor was on road).

- Marlo spent very little time on staffing issues, and did not apportion work among employees, nor did he determine the flow or distribution of materials and supplies. His only duty was to ensure the employees were applying UPS' methods and procedures. Tr. 477:5-24 (as hub supervisor, he spent less than three to five percent of his time on staffing issues).

- Marlo was required to work as directed by his managers. Tr. 104:14-18; 105:2-7 (Marlo did not monitor deliveries by drivers); 135:21-136:15 (goals are dictated without Marlo's input and he cannot question them; he attempts to meet goals by enforcing the Methods); 174:12-15 (UPS trained Marlo to "manage by walking around" also known as MBWA at UPS).

- Staffing issues were determined based on the requirements of the union contract (seniority) and work assignments were dictated by UPS' IE Department. Tr. 57:4-7; 61:13-21 (all on road supervisors ordered to go on road to perform OJS rides for 3 weeks, and preload supervisors ordered to cover); Tr. 85:22-25; 87:4-24 (Marlo did not schedule vacations and did not assign drivers to any routes).

-9-

1   • Marlo's recommendations were given little weight, as evidenced by the fact
2       they were usually not followed. Tr. 538:17-539:6 (Marlo did not have
3       authority to terminate employee who refused to work as directed); Tr. 797:7-
4       798:23 (Marlo's recommendation to his manager re terminating an employee
5       was not followed); Tr. 805:17-806:16 (manager had discretion to not fire
6       employee, and Marlo had to follow his directive); Tr. 830:8-17 (at one point
7       management mandated "you will pink slip everyone with a D2 (missed
8       delivery) concern, period); Tr. 858:18-861:20 (Marlo recommended firing
9       Danny Luna following a verbal assault, but he was returned to work against
10      Marlo's recommendation).
11

12  • As a supervisor, Marlo did not have the authority to hire or fire an employee.
13      Tr. 204:12-205:13 (had no authority to discipline a driver who committed
14      one of the "seven deadly sins" but instead was required to notify his
15      manager immediately); Tr. 421:8-13 (discipline for attendance issues was
16      dictated by UPS); Tr. 525:18-22 (Marlo was required to immediately contact
17      his manager if he caught an employee taking contents out of a package); Tr.
18      529:11-530:10 (union contract determined procedures for discipline, and any
19      leniency had to be implemented by manager]; Tr. 204:12-205:13 (had no
20      authority to discipline a driver who committed one of the "seven deadly
21      sins" but instead was required to notify his manager immediately); Tr.
22      421:8-13 (discipline for attendance issues was dictated by UPS); Tr. 525:18-
23      22 (Marlo was required to immediately contact his manager if he caught an
24      employee taking contents out of a package); Tr. 529:11-530:10 (union
25      contract determined procedures for discipline, and any leniency had to be
26      implemented by manager); Tr. 851:12-17 (manager told Marlo about and
27
28

LEGAL_US_W # 61535112.2

expected him to talk with trouble employee); Tr. 208:23-25 (no authority to promote).

- Marlo supervised employees pursuant to UPS' methods and procedures, and as directed by his managers. Tr. 121:19-21 (performed p.m. audits when instructed to do so by his manager); 123:2-9 (did not perform scan check audits in Lancaster because manager did not tell him to); 125:3-10 (only done about 5 driver release audits, and only when instructed by manager); 126:2-7, 23-25 (never done an audit on his own, only when dictated by a manager, who also directs upon whom the audit will be performed); Tr. 186:2-7 (manager instructed Marlo to conduct at least 2 OJS rides per week); 187: 8-14 (and 2-3 per week in the Sierra Center); Tr. 171:1-11 (if he sees an employee doing something outside of the Methods, he corrects the Method with the employee); Tr. 158:13-23 (gives drivers feedback when riding with them based on checklist provided by UPS); 367:2-368:13 (did not have the authority to take out the air run; manager's decision); 727:6-17 (Marlo rated himself as better than most in planning and organization, because if his manager tells him "you need to do two HABITS this week," he turns in two habits; he believes he's "pretty good at doing what [his] manager asks for.").

- As a preload supervisor, Marlo supervised the hourly employees pursuant to UPS' methods and procedures, and as directed by his managers. Tr. 121:19-21 (performed p.m. audits when instructed to do so by his manager); 123:2-9 (did not perform scan check audits in Lancaster because manager did not tell him to); 125:3-10 (only done about 5 driver release audits, and only when instructed by manager); 126:2-7, 23-25 (never done an audit on his own, only when dictated by a manager, who also directs upon whom the audit will

-11-
LEGAL_US_W # 61535112.2

be performed); Tr. 186:2-7 (manager instructed Marlo to conduct at least 2
OJS rides per week); 187: 8-14 (and 2-3 per week in the Sierra Center); Tr.
171:1-11 (if he sees an employee doing something outside of the Methods,
he corrects the Method with the employee); Tr. 158:13-23 (gives drivers
feedback when riding with them based on checklist provided by UPS);
367:2-368:13 (did not have the authority to take out the air run; manager's
decision); 727:6-17 (Marlo rated himself as better than most in planning and
organization, because if his manager tells him "you need to do two HABITS
this week," he turns in two habits; he believes he's "pretty good at doing
what [his] manager asks for."); 776:17-22 (did not have the authority to
allow hourly employees to work overtime); 382:5-13 (ridiculed for not
writing down an instance where he was working with his fellow supervisors
on an issue); 391:6-22 (Marlo's idea for use of scanner by preloader had to
be approved by manager); 393:10-14 (if manager or division manager
directed him to perform an audit on an employee, he worked as directed);
658:15-23, 660:1-14 (plans were in place for most contingencies, his job was
to execute the plan as directed by UPS); Tr. 171:1-11 (if he sees an
employee doing something outside of the Methods, he corrects the Method
with the employee).

- As a hub supervisor, Marlo supervised the hourly employees pursuant to
  UPS' methods and procedures, and as directed by his managers.  Tr. 121:19-
  21 (performed p.m. audits when instructed to do so by his manager); 123:2-9
  (did not perform scan check audits in Lancaster because manager did not tell
  him to); 125:3-10 (only done about 5 driver release audits, and only when
  instructed by manager); 126:2-7, 23-25 (never done an audit on his own,
  only when dictated by a manager, who also directs upon whom the audit will

FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

be performed); Tr. 186:2-7 (manager instructed Marlo to conduct at least 2
OJS rides per week); 187: 8-14 (and 2-3 per week in the Sierra Center); Tr.
171:1-11 (if he sees an employee doing something outside of the Methods,
he corrects the Method with the employee); Tr. 158:13-23 (gives drivers
feedback when riding with them based on checklist provided by UPS);
367:2-368:13 (did not have the authority to take out the air run; manager's
decision); 727:6-17 (Marlo rated himself as better than most in planning and
organization, because if his manager tells him "you need to do two HABITS
this week," he turns in two habits; he believes he's "pretty good at doing
what [his] manager asks for."); 776:17-22 (did not have the authority to
allow hourly employees to work overtime); 382:5-13 (ridiculed for not
writing down an instance where he was working with his fellow supervisors
on an issue); 391:6-22 (Marlo's idea for use of scanner by preloader had to
be approved by manager); 393:10-14 (if manager or division manager
directed him to perform an audit on an employee, he worked as directed);
658:15-23, 660:1-14 (plans were in place for most contingencies, his job was
to execute the plan as directed by UPS); Tr. 171:1-11 (if he sees an
employee doing something outside of the Methods, he corrects the Method
with the employee).

• Marlo did not have discretion in staffing or scheduling employees, which
  was dictated by UPS policies, including agreements UPS had in place the
  union. Tr. 682:15-24 (manager determined that Marlo was to report to work
  2.5 to three hours prior to the sort); Tr. 264:20-22 (did not make work
  assignments to hourly employees); Tr.82:23-83:1 ("I would supervise the
  Northridge drivers indirectly. I got help with that."); Tr. 84:18-23 (I don't
  dispatch drivers. I have no say in what a driver does, who takes what, who

-13-
LEGAL_US_W # 61535112.2

does this."); Tr. 88:4-16 (Marlo worked with the other supervisors in the center when a sick call came in to determine the available driver with the appropriate knowledge to do the route); Tr. 91:8-13; 92:1-10 (Marlo had no discretion in assigning drivers to routes); Tr. 98:5-7; 318:7-11 (staffing was dictated to supervisors, which sometimes forced them to go on road).

- Marlo had no input on hiring, firing or promotion of employees, did not set rates of pay, and could not schedule employees to work outside of the plan dictated to him by UPS' IE Department. Tr. 382:5-13 (ridiculed for not writing down an instance where he was working with his fellow supervisors on an issue); 391:6-22 (Marlo's idea for use of scanner by preloader had to be approved by manager); 393:10-14 (if manager or division manager directed him to perform an audit on an employee, he worked as directed); 658:15-23, 660:1-14 (plans were in place for most contingencies, his job was to execute the plan as directed by UPS).

- Marlo motivated employees based on the training and procedures he had been taught by UPS. Tr. 515:20-516:15 (three by five training approach was not only taught by UPS, but time was scheduled for "role playing" to ensure supervisors knew had to use the method); 522:21-523:1 (the manager made the decision if an award, such as pizza, would be provided); 527:20-528:15 (used the three by five training taught by UPS to motivate).

- Marlo did not have the authority to "implement process change," but rather had to seek approval from his manager prior to any such "implementation," and without which no "changes" could be made. Marlo Dec. at ¶24; Tr. 121:19-21 (performed p.m. audits when instructed to do so by his manager); 123:2-9 (did not perform scan check audits in Lancaster because manager

-14-

LEGAL_US_W # 61535112.2

did not tell him to); 125:3-10 (only done about 5 driver release audits, and only when instructed by manager); 126:2-7, 23-25 (never done an audit on his own, only when dictated by a manager, who also directs upon whom the audit will be performed); Tr. 186:2-7 (manager instructed Marlo to conduct at least 2 OJS rides per week); 187: 8-14 (and 2-3 per week in the Sierra Center); Tr. 171:1-11 (if he sees an employee doing something outside of the Methods, he corrects the Method with the employee); Tr. 158:13-23 (gives drivers feedback when riding with them based on checklist provided by UPS); 367:2-368:13 (did not have the authority to take out the air run; manager's decision); 727:6-17 (Marlo rated himself as better than most in planning and organization, because if his manager tells him "you need to do two HABITS this week," he turns in two habits; he believes he's "pretty good at doing what [his] manager asks for.").

Marlo spent less than 50% of his time performing exempt tasks while he was a supervisor. See Tr. 110:3-21 (Marlo spent as little as 0.5% and at most 25% (depending on the center assignment) of his time checking on drivers, directing them, assigning additional routes, helping with pickups, etc.); 113:5-14 (Marlo spent 0% and 2% of his time giving drivers directions and instructions while an on road supervisor in Lancaster and Ridgecrest, respectively); 117:18-118:11; 119:10-20 (between zero and two hours a day are spent monitoring drivers, and zero to 30 minutes spent on staffing, when working average of 12 hour days, but as few as 8 hours and as many as 17); 130:16-25 (as on road supervisor, spent between zero and one or two hours per day performing audits); 133:23-135:13 (manager led center manager meetings, and Marlo did not give "suggestions" because he was criticized for making excuses, he had no say in how to improve measurements, such as SPORH); 147:25-148:4 (if he was not on road, Marlo

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

would attend center planning meetings that lasted five to 15 minutes); 197:6-13 (spends zero minutes up to an hour per week at most (if it's a bad week) handling discipline, and has gone a month with zero time spent on discipline issues); 249:25-250:14 (spent more than 50% of his time doing hourly work; would deliver package for 2-3 weeks straight, which is all hourly work, and in one instance 5 weeks of only hourly work performed); 253:15-19, 254:14-20 (twenty to 100% of his time spent doing hourly work in Sierra center); 256: 11-23 (can't remember a day in the Sierra center when he did not transport a package); 289:14-19, 290:8-17; 290:24-292:21 (Marlo recorded multiple instances of "shuttling" packages, for time periods ranging from over an hour to nearly seven hours at a time); 299:13-300:4 (estimates 10-25 instances in the year where he goes on road and delivers packages but it is incorrectly recorded as an OJS ride); 306:15-21; 307:13-16 (loaded and sorted packages for 6 hours on 6-30-03); 317:5-14; 318:7-21; 319:21-23; 320:3-9 (complained to manager and division manager about performing too much hourly work); 324:15-20 (spent more than 50% of his time doing hourly work last year); 325:20-21 (spent more than 50% of his time doing non-exempt work); 326:13-17 (spent more than 50% of time performing hourly work in 2002); 407:25-408:9 (took 4 minutes to do stop counts); 453:25-455:21 (Marlo was directed by his managers to perform hourly (preload) work); 477:5-24 (as hub supervisor, he spent less than three to five percent of his time on staffing issues); 606:5-7 (delivered next-day airs every day as an on road supervisor); 607:2-4 (delivered packages from 9:36-12:56 in the morning on previous Monday); 612:11-20 (parked cars as an on road supervisor, which could take anywhere from five to 40 minutes); 617:21-618:5 (as Hub supervisor, spent 40 to 50 percent of time shuttling packages).

        (ii)    Key evidence for Labor Code Section 226.7 claim:

FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

The evidence will consist of witness testimony, primarily from Plaintiff, and documents that will show that during the relevant time period Plaintiff rarely was "provided" with an opportunity to take a meal or lunch period. The documentary evidence includes, but is not limited to, Plaintiff's Exhibit No. 125.

> (iii)     Key evidence for UCL claim:

See Sections 7(c)(i), (ii) and (iii) above.

> (iv)     Key evidence for declaratory relief:

Moot. See Section 7(b)(v) above.

> Defendant:

> (d)     Defendant plans to pursue the following affirmative defenses at trial:

> (i)     Marlo was exempt from overtime and meal and rest period requirements during the time he worked as an FTS, under the Motor Carrier Act ("MCA"), executive and administrative exemptions. IWC Wage Order No. 9-2001 § 1(A).[8]

---

[8] The Court has held that Marlo is not entitled to overtime pay for the time he worked as a full-time on road supervisor (both exclusively and in a dual capacity as a full-time preload supervisor) because he qualified for the Motor Carrier Act ("MCA") exemption. *See* Order Granting Defendant's Motion for Partial Summary Judgment as to the Motor Carrier Act Exemption, dated March 19, 2009 ("Order re: MCA"). Whether Marlo is entitled to straight time pay for hours worked over eight in a day during the time he worked as a full-time on-road supervisor, remains at issue. *See* Section 12, *infra*.

(ii)     UPS has not engaged in any unlawful practice under the UCL because Marlo was exempt from the overtime and meal and rest period requirements. *E.g.*, *Lazar*, 69 Cal. App. 4th at 1505-06 (where a violation of UCL is premised on the allegation that a practice is "unlawful" under some other law, a defense to underlying law is also defense to UCL claim).

(iii)     Marlo is not entitled to recover straight time pay for overtime hours under Labor Code Section 1198. See Plaintiff's Memorandum of Contentions of Fact and Law, filed April 5, 2009.

(iv)     The applicable three-year statute of limitations and the Court's Order re: MCA (*see supra* note 2) precludes Marlo from recovering any alleged unpaid overtime under Labor Code Sections 1198 and 510 during the following time periods:

- Any time prior to May 6, 2000

- From September 4, 2001 to June 29, 2003

- From July 21, 2003 to February 27, 2005

- From July 19, 2006 to November 12, 2008[9]

CAL. CODE CIV. PROC. § 338(a).

---

[9] The corresponding dates for which he is eligible to recover are:

- October 1, 2000 through September 3, 2001;

- June 30, 2003 through July 20, 2003: and

- February 28, 2005 through July 18, 2006

-18-
FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

(v)     Marlo is not eligible to recover for his missed meal and rest period claim under Labor Code Section 226.7 for any occurrence before January 1, 2001, because such payments were not available before that date. CAL. LAB. CODE § 226.7.[10]

(vi)     The applicable four-year statute of limitations precludes Marlo from recovering any alleged restitution for his UCL claim before May 6, 1999. CAL. BUS. & PROF. CODE § 17208.

(vii)     Marlo is estopped from pursuing his claims based on Labor Code Section 1198, 510, and 226.7 to the extent those claims are based on his special assignment as a Retention Supervisor, because he never once alleged that his claims were based on that job position during the six years this case has been litigated.[11]

(viii)     Marlo has waived the right to pursue his claims based on Labor Code Section 1198, 510, and 226.7 to the extent those claims are based on his special assignment as a Retention Supervisor, because he never once alleged that his claims were based on that job position during the six years this case has been litigated.[12]

---

[10] The Court's April 14, 2009 Order Granting in Part and Denying in Part Defendant's Motions in Limine and Denying Plaintiff's Motions in Limine so held. (See Order, at p. 7.)

[11] Defendant asserts the Court's April 14, 2009 Order Granting in Part and Denying in Part Defendant's Motions in Limine and Denying Plaintiff's Motions in Limine so held. (See Order, at p. 16-17.) Plaintiff asserts the Order does not preclude Plaintiff from presenting evidence he was in fact a hub supervisor during that time period (See Order at p. 17, lines 18-24).

[12] *See supra* note 11.

(ix)     Marlo is not entitled to recover damages for his claims based on Labor Code Sections 1198, 510, and 226.7, because any recovery from UPS based on Plaintiff's alleged non-exempt status would result in his unjust enrichment, in that he also received benefits that were only available to exempt management personnel during the relevant time period.

UPS will not assert that Plaintiff misperformed duties communicated to him, as that defense is articulated in *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 802 (1999). UPS does assert, however, that to properly consider whether Marlo met the tests of the exemptions, the jury is entitled to hear and see, through testimony and exhibits, what actual expectations the company had and what instructions the company communicated to Plaintiff regarding his duties. *See* Wage Order 9-2001, Sections 1(A)(1)(e) and 1(A)(2)(e).

(e)     The elements required to establish Defendant's affirmative defenses are:

(i)     Elements of the exemptions

Executive Exemption

Marlo properly was classified as exempt under the executive exemption if he:  (1) received a salary of at least twice the California state minimum wage;[13] (2) performed duties and responsibilities that involved the management of the enterprise in which he was employed or of a customarily

---

[13] The Court granted summary adjudication in favor of UPS on this element. *See* Order Granting in Part and Denying in Significant Part Defendant's Motion for Summary Judgment as to the Executive and Administrative Exemptions, dated March 19, 2009 ("Order re: Executive/Administrative MSJs") at 12.

recognized department or subdivision of the enterprise in which he was employed; (3) customarily and regularly directed the work of two or more other employees in the department or subdivision;[14] (4) had the authority to hire or fire other employees or if his suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees were given particular weight; (5) customarily and regularly exercised discretion and independent judgment; and (6) engaged in duties which met the test of the exemption more than 50% of the time. IWC Wage Order No. 9-2001 § (1)(A)(1).[15]

### Administrative exemption

Marlo properly was classified as exempt under the administrative exemption, if he: (1) received a salary of at least twice the California state minimum wage;[16] (2) performed duties and responsibilities that involve the performance of office or non-manual work directly related to management policies or general business operations of his employer; (3) customarily and regularly exercised direction and independent judgment; (4) either (a) regularly and directly assisted an employee in a bona fide executive or administrative capacity, or (b)

---

[14] The Court granted summary adjudication in favor of UPS on this element. *See* Order re: Executive/Administrative MSJs at 12 n.2.

[15] IWC Wage Order 9 expressly adopts the following regulations under the Fair Labor Standards Act ("FLSA"), as implemented prior to August 23, 2004, to be used in construing "activities constituting exempt work and non-exempt work" under the executive exemption test: 29 C.F.R. §§ 541.102, 541.104-111, and 541.115-116. IWC Wage Order No. 9-2001 § (1)(A)(1)(e).

[16] The Court granted summary adjudication in favor of UPS on this element. *See* Order re: Executive/Administrative MSJs.

LEGAL_US_W # 61535112.2

performed under only general supervision work along specialized or technical

lines, requiring special training, experience, or knowledge, or (c) executed under

only general supervision special assignments and tasks; and (5) engaged in duties

that met the test of the exemption more than 50% of the time.  IWC Wage Order

No. 9-2001 § (1)(A)(2).[17]

(ii)     No UCL claim where there is no underlying
violation

A defense to the underlying violation is also a defense to a UCL claim

premised on that alleged violation.  *E.g.*, *Lazar*, 69 Cal. App. 4th at 1505-06

(where a violation of UCL is premised on the allegation that a practice is

"unlawful" under some other law, a defense to underlying law is also defense to

UCL claim).

(iii)     No straight-time pay for overtime hours under
Labor Code Section 1198.

Marlo is not entitled to recover straight time pay for overtime hours

under Labor Code Section 1198.  See Plaintiff's Memorandum of Contentions of

Fact and Law, filed April 5, 2009.

(iv)     Three-year statute of limitations for unpaid
overtime claims

---

[17] IWC Wage Order 9 expressly adopts the following regulations under the FLSA,
as implemented prior to August 23, 2004, to be used in construing "activities
constituting exempt work and non-exempt work" under the administrative
exemption test:  29 C.F.R. §§ 541.201-205, 541.207-208, 541.210, and 541.215.
IWC Wage Order No. 9-2001 § (1)(A)(2)(f).

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

Claims for unpaid overtime are subject to a three-year statute of limitations. CAL. CODE CIV. PROC. § 338(a) (claims based on a "liability created by statute other than a penalty or a forfeiture" governed by a three year period of limitation).

(v)     No Labor Code Section 226.7 payments available before January 1, 2001

Payments for missed meal and rest periods under Labor Code Section 226.7 did not take effect until January 1, 2001. The Legislature did not state that § 226.7 would apply retroactively or that it clarified existing law. Therefore, the general rule applies, and the statute must be applied prospectively only. *E.g., Evangelatos v. Superior Court*, 44 Cal. 3d 1188, 1207 (1988) ("It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent."). *See also Aetna Casualty and Surety Co. v. Industrial Accident Comm'n*, 30 Cal. 2d 388, 393, 395 (1947) (provisions of the California Labor Code operate prospectively only, even though such provisions may otherwise be liberally construed for the benefit of covered employees).

(vi)     Four-year statute of limitations for UCL claims

UCL claims are subject to a four-year statute of limitations. CAL. BUS. & PROF. CODE § 17208.

(vii)     Estoppel

The doctrine of estoppel applies if Plaintiff misled UPS, and UPS reasonably relied on that conduct; bad faith or an intent to mislead is not required.

-23-
LEGAL_US_W # 61535112.2

*Lantzy v. Centex Homes*, 31 Cal. 4th 363, 384 (2003); *Shaffer v. Debbas*, 17 Cal.
App. 4th 33, 43 (1993).

(viii)    Waiver

"Waiver is the intentional relinquishment of a known right after
knowledge of the facts." *Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944).

(ix)    Unjust enrichment

The elements for a claim of unjust enrichment are "receipt of a benefit
and unjust retention of the benefit at the expense of another." *Lectrodryer v.
Seoulbank*, 77 Cal. App. 4th 723, 726 (2000); *Calistoga Civic Club v. Calistoga*,
143 Cal. App. 3d 116 (1983).

(f)    In brief, the key evidence Defendant relies on for each
affirmative defense is:

(i)    Key evidence for the exemptions

Executive Exemption

(a)    Marlo received a salary of at least twice the
California state minimum wage.

The Court granted summary adjudication in favor of UPS on this
element. *See* Order re:  Executive/Administrative MSJs at p. 12.

(b)    Marlo performed duties and responsibilities
that involved the management of a customarily recognized subdivision.

(1)    Marlo "managed."

-24-
FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

The evidence will consist of witness testimony and documents and will show that during the relevant time period, Plaintiff performed duties that involved the management of a customarily recognized subdivision.  For example:

• Marlo daily assessed his subordinates' mental, emotional, and physical condition and monitored and directed their work throughout the day.  *E.g.*, Marlo Depo. Tr. 100:2-4; 100:23-101:7; 103:24-104:13; 106:20-110:2; 111:1-13; 153:22-154:21; 154:22-155:6; 161:15-24; 162:18-163:10; 163:14-165:16; 266:14-24; 267:3-7; 267:11-15; 267:16-18; 268:17-269:23; 269:24-271:9; 379:7-382:4; 383:5-385:9; 386:8-387:10; 405:9-23; 406:13-407:7; 478:17-483:12; 677:1-15; Ex. 6.

• Marlo made decisions regarding staffing, scheduling, and apportioning of work.  *E.g.*, Tr. 85:16-21; 86:25-87:3, 87:25-88:3, 88:4-16; 90:1-6; 91:14-92:16; 94:4-95:15; 102:3-10; 104:8-13; 105:14-106:19; 111:23-112:3; 133:4-15; 263:18-21; 264:14-19; 265:4-11; 271:10-18; 469:20-470:1; 470:7-472:5; 483:13-484:7; 502:19-25; 674:2-12; 672:15-23; 677:16-678:8.

• Marlo found ways to motivate subordinates.  *E.g.*, Tr. 183:4-7; 187:19-188:11-189:3; 189:10-11; 189:13-16; 189:23-190:1; 190:3-6; 522:2-523:20.

• Marlo evaluated, coached, and trained subordinates.  *E.g.*, Tr. 120:10-23; 121:6-11; 121:25-122:10; 123:10-125:2; 125:11-127:4; 131:8-15; 136:16-19; 156:24-158:2; 158:13-15; 158:24-159:5; 170:5-172:5; 173:15-174:3; 176:1-177:5; 182:10-183:21; 185:4-16; 200:8-10; 201:1-203:9; 391:23-392:4; 392:20-393:9, 19-23; 394:20-25; 395:1-11; 410:19-411:6; 411:12-18; 412:25-416:4; 415:10-11; 418:5-17; 486:25-487:7; 487:22-494:3; 508:1-510:1; 511:14-514:7; 515:10-518:14; 559:22-560:14; 569:2-10; 688:18-691:2.

-25-

1    • Marlo counseled and disciplined subordinates. *E.g.*, Tr. 160:2-8;
2    190:17-191:6; 191:11-192:5; 193:24-195:3; 211:21-23; 365:4-366:2; 419:24-
3    420:1; 420:11-422:5; 422:14-424:1; 426:19-427:12; 524:15-526:13; 526:14-
4    527:19; 527:20-530:19; 537:12-539:18; 691:21-693:13; 795:8-24; 800:10-801:24;
5    806:19-807:22; 845:18-847:1; 849:10-851:11; Exs. 26-28, 45, 47, 48.

6
7    • Marlo recommended status changes of subordinates, such as
8    discharge and promotions. *E.g.*, Tr. 207:20-208:14; 209:13-211:23; 423:24-424:1;
9    426:19-427:12; 427:17-428:3; 537:12-539:12; 539:22-540:25.

10   • Marlo investigated, evaluated, and resolved employee as well as
11   customer issues. *E.g.*, Tr. 139:7-140:6; 141:14-21; 212:17-214:5; 214:6-14;
12   428:16-429:21; 430:8-13; 532:10-533:10; 541:20-542:3.
13

14   • Marlo analyzed past performance for his work unit, planned how to
15   meet goals, made adjustments to maximize future performance, and coordinated
16   with other FTS. *E.g.*, Tr. 133:4-22; 134:4-18; 135:14-19; 138:3-139:6; 142:9-15;
17   215:1-216:7; 216:19-218:1; 367:7-10; 368:6-21; 369:2-18; 373:13-374:17; 375:10-
18   378:23; 387:11-14; 389:7-391:22; 398:18-399:7; 400:3-10; 401:6-24; 403:19-
19   404:2; 431:19-432:1; 435:2-18; 435:22-436:17; 437:14-438:6; 438:12-23; 439:11-
20   440:5; 440:20-441:22; 443:4-444:5; 444:25-445:18; 498:4-499:12; 501:7-502:2;
21   502:6-16; 535:19-537:6; 557:7-559:21; 562:14-563:19; 673:2-5; 673:10-17;
22   684:19-685:3; 685:23-687:3; Ex. 6.
23

24                    (2)    Marlo managed a "customarily
25   recognized subdivision."
26
27
28

-26-
LEGAL_US_W # 61535112.2

The evidence will consist of witness testimony and documents and will show that during the relevant time period, Plaintiff performed duties that involved the management of a customarily recognized subdivision. For example:

- As an on-road supervisor, Marlo supervised a specific group of drivers based on the geographic area in which their delivery routes were located. For example, when Marlo worked at the Sierra center, he supervised the drivers who delivered packages in Northridge. Tr. 82:15-83:5 ("We had general geographic areas that we supervised. I had Northridge. So I would supervise the Northridge drivers . . . ."). The other two supervisors were each assigned to a particular area: One supervised the drivers who delivered packages in Tarzana and Reseda, and the other supervised the drivers who delivered packages in Chatsworth. Tr. 83:9-15.

- As a preload supervisor, Marlo supervised part-time supervisors and hourly workers based on geographic area and/or operational responsibility. For example, he had responsibility over the Sierra center; another FTS was responsible for the primary unload and small sort; another, for the Warner center; another, for the Granada center; and another, for the Toluca center. Tr. 261:10-262:10; 262:11-14.

- As a hub supervisor, Marlo supervised part-time supervisors and hourly workers by operational responsibility. For example, he had responsibility over next-day air, metro unload, sort, primary unload, and/or outbound load. Tr. 462:2-4, 8-10, 21-22; 463:9-11, 14-16; 466:25-467:5; Herron Decl. ¶ 5 (FTS each supervise a completely different operation).

(c)     Marlo customarily and regularly directed the work of two or more other employees.

-27-
LEGAL_US_W # 61535112.2

The Court granted summary adjudication in favor of UPS on this
element. *See* Order re:  Executive/Administrative MSJs at p. 12, n.2.

        (d)    Marlo's recommendations as to hiring,
firing, advancement, promotion or any other change of status of other employees
were given particular weight.

The evidence will consist of witness testimony and documents and
will show that during the relevant time period, Marlo's recommendations as to
hiring, firing, advancement, promotion or any other change of status of other
employees were given particular weight.  For example:

• Marlo testified that he did recommend discharge and promotions,
and that some of his recommendations were effectuated. *See* Section II(A)(2)(a),
*supra. See also* Abele Decl. Ex. D (Sims Tr. 214:9-15; 285:25-286:11; 356:16-20
(Sims, a division manager, gave particular weight to Marlo's recommendation to
terminate an employee)); Abele Decl. Ex. C (Kanamori Tr. 112:8-13; 149:18-
150:20 (FTS play a significant role in the "fate of the employee")).

• Marlo's testimony is further supported by evidence that an
unfavorable assessment by an FTS during the promotion process will eliminate that
candidate from contention.  Abele Decl. Ex. C (Kanamori Tr. 112:8-13 (an
unfavorable assessment by an FTS during the promotion process will eliminate the
promotion candidate from contention)); Abele Decl. Ex. E (Plaintiff's Response to
RFA at 4:23-5:7 (FTS answers on form can prevent candidate's promotion)).

• Moreover, FTS' recommendations about hiring are given special
weight.  Abele Decl. Ex. C (Kanamori Tr. 49:14-18; 63:18-19 (FTS "do have a say

in [hiring]"); 65:4-11 (hiring recommendations by FTS given special weight); 68:4-5 ("If everything's pretty much equal, I'll hire the management referral.")).

(e)    Marlo customarily and regularly exercised discretion and independent judgment.

The evidence will consist of witness testimony and documents and will show that during the relevant time period, Marlo customarily and regularly exercised discretion and independent judgment. For example:

• At his deposition, Marlo described a job that required almost constant decisionmaking, independent of constraints. *See* Section II(A)(2)(a), *supra.* Marlo testified that "there is no typical day at UPS." Tr. 167:7-10 ("Every day is different. So it's tough to nail down a typical day."); Tr. 168:22-169:8 ("[S]o when you talk about a typical day, there is no real typical day."); 581:4-6 ("There was no typical day in the hub."); 681:4-9 ("Once again, you're saying 'typical day,' and the days were atypical.").

• UPS expects FTS to exercise discretion and independent judgment in carrying out their managerial duties. *E.g.*, Herron Decl. ¶ 7, Ex. B at 19, 37 ("We decentralize management to the most effective degree possible. . . . We appoint people to the positions of managers and supervisors when we have confidence in their judgment and their ability to assume the responsibilities of their particular jobs. . . . [W]e support them by continuing their training and by giving them the freedom to exercise their judgment and ability."); ¶ 6, Ex. A at 34, 45 ("[D]ecisions should be made at the lowest possible level with good judgment and availability of relevant facts."). The importance of discretion also appears in FTS evaluations, which focus on leadership, strategic thinking, strategic relationships, process management, promoting innovation, process analysis, people skills, and

managing conflict. Tr. 700:15-701:3, Ex. 14 at16-22; Herron Decl. ¶ 8, Ex. C. Marlo rated himself "above average" in many of these skills, including strategic thinking, motivating others, integrity, managing conflict, and developing others. Tr. 722:19-723:17, 728:22-729:16; 759:11-760:1; Herron Decl. ¶ 8, Ex. C.

• Marlo testified that he seldom referenced UPS' polices and procedures, which are merely a general "guide" regarding some of his job responsibilities rather than a "how-to" manual governing every aspect of his day-to-day job duties, and that those guidelines explicitly required him to make his own judgments. Tr. 308:7-10 (Job Breakdown Analysis ("JBA") does not include all of his daily responsibilities), 673:19-674:12 (JBA directed him to make on-the-spot judgments); 694:11-15 (refers to JBA because "[i]t's a guide"); 696:2-14 (did not refer to JBA often); 696:15-25 (JBA did not tell FTS how much time to spend on each job duty).

(f)     Marlo engaged in duties that met the test of the exemption more than 50% of the time.

The evidence will consist of witness testimony and documents and will show that during the relevant time period, Marlo engaged in duties that met the test of the exemption more than 50% of the time. For example:

• Marlo performed a myriad of management duties found to be exempt tasks by applicable law. *See* Section II(A)(2)(a), *supra*. Marlo spent more than 50% of his time on such tasks, and he spent far less than 50% of his time on the hourly work performed by his subordinates. *See* Decls. of Robert Dunkel ¶ 6, Herb Wilson ¶ 6, Ron Fuller ¶ 6, Carl Sexton ¶6, Bobby Pastoral ¶ 6, Ray DeCuffa ¶ 6, attached as exhibit E to the Abele Declaration. Marlo cannot dispute this; he admitted in deposition that he was unable to estimate how much time he spent on

FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

managerial, as opposed to hourly, duties.  Marlo Tr. 115:22-116:9; 117:25-118:1; 130:16-25; 148:12-15; 169:6-8; 169:19-170:1; 181:14-17; 181:22-25; 183:25-184:5; 184:14-20; 195:7-14; 199:14-24; 203:10-12; 214:15-20; 222:19-22; 404:3-9; 407:8-13; 472:6-10; 494:23-25; 514:8-11; 621:4-622:8.

• Most of UPS' hourly workforce is unionized, and the Collective Bargaining Agreements *prohibit* FTS from performing hourly work except under very limited circumstances.  Herron Decl. ¶ 10, Ex. E.  *See also* Abele Decl. Ex. G (Pl.'s Resp. to Interrog. Set 3 at 4:4-10 (Marlo only performed two categories of tasks: managerial activities as defined by 29 C.F.R. § 541.102(b), and the movement or delivery of packages)); Abele Decl. Ex. F (Pl.'s Resp. to RFA at 9:17-22 (Marlo only performed package handling tasks in emergency situations)).

Administrative exemption

(a)    Marlo received a salary of at least twice the California state minimum wage.

The Court granted summary adjudication in favor of UPS on this element.  *See* Order re:  Executive/Administrative MSJs at p. 12.

(b)    Marlo performed duties and responsibilities that involved the performance of office or non-manual work directly related to management policies or general business operations of his employer.

*See* Section 7(f)(i)(b), *supra*.

(c)    Marlo customarily and regularly exercised direction and independent judgment.

*See* Section 7(f)(i)(e), *supra*.

-31-
FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

(d)    Marlo (a) regularly and directly assisted an
employee in a bona fide executive or administrative capacity, or
(b) performed under only general supervision work along specialized or technical
lines, requiring special training, experience or knowledge, or (c) executed under
only general supervision special assignments and tasks.

See Section 7(f)(i)(b), *supra*.

(e)    Marlo was engaged in duties that met the
test of the exemption more than 50% of the time.

See Section 7(f)(i)(f), *supra*.

(ii)    Key evidence re: No UCL claim where there is no
underlying violation

See Sections 7(f)(i) and 7(f)(ii), *supra*.

(iii)    Key evidence re:  No recovery of straight time pay
for overtime hours under California Labor Code Section 1198.

See Sections 7(f)(i) and 7(f)(ii), *supra*.

(iv)    Key evidence re:  Three-year statute of limitations
for unpaid overtime claims

Marlo filed his Complaint on May 6, 2003.  The jury cannot award
any damages for the period of time prior to May 6, 2000.  The Court has held that
Marlo is not entitled to overtime pay for the time he worked as a full-time on road
supervisor (both exclusively and in a dual capacity as a full-time preload
supervisor) because he qualified for the MCA exemption.  *See* Order re:  MCA.

FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

(v)     Key evidence re: No Labor Code Section 226.7 payments available before January 1, 2001

Marlo filed his Complaint on May 6, 2003. He cannot seek payments for missed meal and rest periods for a time that precedes the effective date of the statute providing for such payments.

(vi)     Key evidence re: Four-year statute of limitations for UCL claims

Marlo filed his Complaint on May 6, 2003. The court cannot award any restitution for the period of time prior to May 6, 1999. The Court has held that Marlo is not entitled to overtime pay for the time he worked as a full-time on road supervisor (both exclusively and in a dual capacity as a full-time preload supervisor) because he qualified for the MCA exemption. *See* Order re: MCA.

(vii)     Key evidence re: Estoppel

In the six years that Marlo has litigated this case, he never once indicated that any of his claims were based on his special assignment as Retention Supervisor, never alleged that he was not exempt from overtime and meal and rest period requirements during the time he was on special assignment as Retention Supervisor, and never requested or produced any discovery based on any such allegation. During his deposition, Marlo testified that he did hold the Retention Supervisor position.

(viii)     Key evidence re: Waiver

In the six years that Marlo has litigated this case, he never once indicated that any of his claims were based on his special assignment as Retention

-33-

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

Supervisor, never alleged that he was not exempt from overtime and meal and rest period requirements during the time he was on special assignment as Retention Supervisor, and never requested or produced any discovery based on any such allegation.  During his deposition, Marlo testified that he did hold the Retention Supervisor position.

(ix)   Unjust Enrichment

During the relevant time period, Marlo received benefits that are available only to exempt management personnel, including stock, Management Incentive Payments, and half-month bonuses.

8.   In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following ultimate issues remain to be tried:

(a)   Whether UPS proved it properly classified Plaintiff as "exempt" from California's overtime and meal and rest period requirements during the time he worked as a Hub, On-Road or Preload FTS, under the executive exemption;

(b)   Whether UPS proved it properly classified Plaintiff as "exempt" from California's overtime and meal and rest period requirements during the time he worked as a Hub, On-Road or Preload FTS, under the administrative exemption;

(c)   Whether Marlo proved that (1) UPS did not provide Plaintiff an opportunity to take one meal break of at least 30 minutes on the workdays that he worked more than five hours, or two meal breaks of at least 30

LEGAL_US_W # 61535112.2

minutes on the workdays that he worked more than 10 hours, and that Plaintiff did

not waive the meal periods; or (2) UPS did not authorize and permit Plaintiff to

take a 10-minute rest period for every four hours worked.

9.    All discovery is complete.  On July 28, 2005, counsel for the

parties signed a stipulation regarding categories of discovery that had been

requested and produced, and categories of discovery that UPS did not need to

produce.  The Court entered that stipulation as an order on August 4, 2005.  No

party has asserted that it needed additional discovery after that time.  *See* Order re:

MCA at p. 34.

10.    All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover

as required by L.R. 16-6.1.  Unless all parties agree that an exhibit shall be

withdrawn, all exhibits will be admitted without objection at trial, except those

exhibits listed below:

(a)    Plaintiff objects to Exhibit Nos. 358, 694, 695, 696, 697,

698, 699, 700, 701, 702, 703, 704, 705, 792, 793, 794, 795, 796, 861, 928, 929,

930, 931, 932, 933, 934, 935, 936, 937, 938, 939.

The objections and grounds therefor are:

Relevance

(b)    Defendant objects to Exhibit Nos. 5, 6, 7, 15, 16, 17, 18,

19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40,

41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 61, 63, 64, 65, 66, 67, 68, 71, 72, 73, 74,

75, 77, 78, 79, 104, 106, 107, 108, 109, 110, 111, 112, 114, 117, 118, 119, 120, 121, 122, 123, 125, 126.

The objections and grounds therefor are:

| Exhibit No. | Exhibit Description | Objection |
|---|---|---|
| 5 | Center Summaries | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 6 | JHA Observation Forms | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 7 | VSTA (Vehicle Safety Trainer Audit) | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 15 | Center, Division, District Morning Report | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 16 | Package Center Weekly Operation Report Summary | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 17 | Management Structure | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 18 | Daily Package Recap | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
|---|---|---|
| 19 | Specifications for Inside PM Operation Bates Nos. PL 141 – 146 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 20 | Specifications for Local Sort Operation Bates Nos. PL 147 – 159 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 21 | Specifications for Preload and Driver Sort and Load Bates Nos. PL 160 – 175 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 22 | Specifications for Pick-up Operation Bates Nos. PL 176 – 181 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 23 | Specifications for Delivery Operation On-Road Bates Nos. PL 194 – 208 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 24 | Load Methods Management Certification | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 25 | Unload Methods Management Certification | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 26 | Hub Methods Manual Load | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 27 | The I.E. Approach to Achieving Operational Excellence | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
|---|---|---|
| 28 | Module I - Central Sort | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 29 | Module II - Local Sort | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 30 | Module III - Preload | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 31 | Module V - Feeder Operations | Irrelevant (Fed. R. Evid. ("FRE") 401, 402).<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |
| 32 | Specifications for Service Check | Lacks Foundation (FRE 104); Not Authentic (FRE 901).<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| | | |
|---|---|---|
| 33 | 1-12-04 Letter to West Los Angeles Team Member from Gene S. Kanamori | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 34 | Roles and Responsibilities Checklist Part-time | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 35 | The Manager's Guide to the Initial Assessment | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 36 | The Manager's Guide to the Critical Skills Assessment | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 37 | Roles and Responsibilities Checklist Full-time | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 38 | Four Column Spreadsheet Bates Nos. D-10322 – D-10330 | UPS reasserts its objections raised in its Motion *in Limine* No. 4: Irrelevant (FRE 401, 402); Unfair Prejudice, Confusion, and Waste of Time (FRE 403); Hearsay (FRE 802). UPS further objects because the evidence lacks foundation under FRE 104. |
| 39 | 9-1-87 UPS Methods and Measurement Preload Workshop - 40 Methods | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

| 40 | 8-1-86 UPS Methods and Measurement Workshop - 70 Element of the Job | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
|---|---|---|
| 41 | 1-1-95 UPS Package Delivery and Pickup Administration - Section 320 Allowance Control - 310-05 | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 42 | 1-1-95 UPS Package Delivery and Pickup Administration - Section 310 Basic Time Values - 310-07 | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 43 | 1-1-95 UPS Package Delivery Sort and Load - 214 Basic Time Values | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 44 | 1-1-95 UPS Belt to Car - 220 Methods Description | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 45 | 1-1-95 UPS Package Delivery Sort and Load Boxline to Car - 230 Methods Description | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 46 | 1-1-95 UPS Package Delivery Sort and Load Roller to Car - 240 Methods Description | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 47 | 1-1-95 UPS Delivery Sort and Load Slide to Car - Non-PAS Preload - 250 Methods Description | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 48 | 1-1-95 UPS Delivery Sort and Load Stack to Car - Non-PAS Preloads - 270 Methods Description | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
|---|---|---|
| 49 | 1-1-95 UPS Package Delivery Sort and Load Loading Trailers Without Rollers - 282 Methods Description | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 50 | 2004 Balanced Scorecard | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 51 | The Manager's Guide to Critical Skills Assessment | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 61 | UPS' SLS Learning Preparation 2002 materials entitled "The Supervisor in Management" | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 63 | UPS document entitled "Specifications for Inside P.M. Operation," bearing Bates Nos. PL 141 to PL 146 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 64 | UPS document entitled "Specifications for Local Sort Operation," bearing Bates Nox. PL 147 to PL 159 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 65 | UPS document entitled "Specifcations for Preload and Driver Sort and Load," bearing Bates Nos. PL 160 to PL 175 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 66 | UPS document entitled "Specifications for Picup Operation," bearing Bates Nos. PL 176 to PL 1181 | Lacks Foundation (FRE 104); Not Authentic (FRE 901).<br><br>UPS further objects because Plaintiff's description does not match Plaintiff's documents produced bearing Bates numbers PL 176 through PL 1181. Because Plaintiff has failed to accurately identify the exhibit, UPS reserves its right to supplement its objections after the exhibit is clearly designated. |
| --- | --- | --- |
| 67 | UPS document entitled "Specifications for Delivery Operation – On Road," bearing Bates Nos. PL 194 to PL 208 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 68 | UPS document entitled "Specifications for Dispatch," bearing Bates Nos. PL 182 to PL 193 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). |
| 71 | National Master United Parcel Service Agreement for the period of August 1, 2002 through July 31, 2008 | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 72 | The Darden Memo dated July 22, 2004 | Irrelevant (FRE 401, 402).<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 73 | UPS "Supervisor Candidate Initial Assessment" form, last revised July 23, 2003 | Lacks Foundation (FRE 104); Not Authentic (FRE 901). Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to object after the Bates numbers are identified. |
|----|----|----|
| 74 | The December 15, 2003 e-mail from Alan Wiener of Human Resources instructing FTS to conduct nine (9) Backing PCMs that week and next. | Plaintiff has not identified Bates numbers for this Exhibit.  UPS reserves its right to object after the Bates numbers are identified. |
| 75 | E-mail dated September 10, 2004 from Lori Cruz advising FTS of a PCM regarding the correct procedure for z-scanning which had to be given in the week ending September 18, 2004 | Plaintiff has not identified Bates numbers for this Exhibit.  UPS reserves its right to object after the Bates numbers are identified. |
| 77 | UPS' On Road Late Air Plan, including the Late Air Contingency Plan Unload System Plan and the Late Air Contingency Plan for various UPS | Plaintiff has not identified Bates numbers for this Exhibit.  UPS reserves its right to object after the Bates numbers are identified. |
| 78 | Cost accounting document from UPS' Finance and Accounting Department for the Lancaster package center facility | Irrelevant (FRE 401, 402). Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 79 | UPS' district and divisional organization charts for California, bearing Bates Nos. D-10286 to D-10321 | Irrelevant (FRE 401, 402); Unfair Prejudice, Confusion, and Waste of Time (FRE 403). |
|-----|-----|-----|
| 104 | UPS' "Service Provider Delivery and Pickup Methods Update 1/2003" | Plaintiff has not identified Bates numbers for this Exhibit. UPS reserves its right to object after the Bates numbers are identified. |
| 106 | UPS' Form 10-K filed with the SEC for the fiscal year ended December 31, 2004 | UPS reasserts its objections raised in its Motion *in Limine* No. 2: Irrelevant (FRE 401, 402); Unfair Prejudice, Confusion and Waste of Time (FRE 403).

UPS further objects based on the Court's April 14, 2009, order granting UPS's Motion *in Limine* No. 2. Therein, the Court excluded evidence regarding relief not available to Plaintiff, including punitive damages.

UPS further objects because Exhibit 106 violates the parties' Joint Stipulation No. 3 to Exclude Testimony, Evidence, Argument, or Comment Concerning Defendant's Financial Condition filed on March 23, 2009.

Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 107 | Employee Response Inventory ("ERI") | UPS reasserts its objections raised in its Motion *in Limine* No. 4: Irrelevant (FRE 401, 402); Unfair Prejudice, Confusion, and Waste of Time (FRE 403); Hearsay (FRE 802). UPS further objects because the evidence lacks foundation under FRE 104.<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |
| --- | --- | --- |
| 108 | Defendant UPS' Opposition to Plaintiff's Ex Parte Application for Sanctions | UPS reasserts its objections raised in its Motion *in Limine* No. 3: Irrelevant (FRE 401, 402) because the discovery dispute has been resolved; Unfair Prejudice, Confusion, and Waste of Time (FRE 403).<br><br>UPS further objects based on the Court's April 14, 2009, order regarding UPS's Motion *in Limine* No 3. Therein, the Court excluded any reference to the Court's prior adjudication of discovery disputes.<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |

-45-

LEGAL_US_W # 61535112.2

| 109 | Declaration of Leon Herron in Support of Defendant United Parcel Service Inc.'s Opposition to Plainitff's Ex Parte Application for Sanctions executed on March 24, 2005 | UPS reasserts its objections raised in its Motion *in Limine* No. 3: Irrelevant (FRE 401, 402) because the discovery dispute has been resolved; Unfair Prejudice, Confusion, and Waste of Time (FRE 403).

UPS further objects based on the Court's April 14, 2009, order regarding UPS's Motion *in Limine* No 3.  Therein, the Court excluded any reference to the Court's prior adjudication of discovery disputes.

Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |
|---|---|---|
| 110 | Monthly time logs of Michael Marlo | Hearsay (FRE 802); Lacks Foundation for an Exception to the Hearsay Rule (FRE 802); Violates the Best Evidence Rule (FRE 1002).

Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 111 | Handwritten notes of activities performed and time spent by Michael Marlo | Hearsay (FRE 802); Lacks Foundation for an Exception to the Hearsay Rule (FRE 802); Violates the Best Evidence Rule (FRE 1002).<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |
| --- | --- | --- |
| 112 | Letter Report of Phillip H. Allman, Ph.D. dated April 6, 2009 | UPS reasserts its objections raised in its Motion *in Limine* No. 2: Irrelevant (FRE 401, 402) because the Exhibit evidences (1) claims not asserted in the complaint and (2) claims outside the liability period for meal and rest breaks; Unfair Prejudice, Confusion, and Waste of Time (FRE 403).<br><br>UPS further objects based on the Court's April 14, 2009, order granting UPS's Motion *in Limine* No. 2.  Therein, the Court excluded evidence regarding (1) causes of action not stated in Plaintiff's complaint, including claims for wage statement violations, and (2) relief not available to Plaintiff, including damages for meal and rest period violations prior to January 1, 2001.<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 114 | Phillip H. Allman, Ph.D.'s list of Trial and Arbitration Testimony | UPS reasserts its objections raised in its Motion *in Limine* No. 2: Irrelevant (FRE 401, 402) because the Exhibit evidences (1) claims not asserted in the complaint and (2) claims outside the liability period for meal and rest breaks; Unfair Prejudice, Confusion, and Waste of Time (FRE 403). |
| | | UPS further objects based on the Court's April 14, 2009, order granting UPS's Motion *in Limine* No. 2. Therein, the Court excluded evidence regarding (1) causes of action not stated in Plaintiff's complaint, including claims for wage statement violations, and (2) relief not available to Plaintiff, including damages for meal and rest period violations prior to January 1, 2001. |
| | | Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |
| 117 | 7-22-04 Memo, Darden to US Domestic Region Managers, US Domestic District Managers | Irrelevant (FRE 401, 402). |
| | | Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

| 118 | 3-6-05 Hours of Service, District West L.A. | Not Authentic (FRE 901). Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objects after the Bates numbers are identified. |
|-----|------|------|
| 119 | Defendant United Parcel Service, Inc.'s Opposition to Plaintiff's Ex Parte Application for Sanctions for Defendant's Alleged Concealment and Destruction of Evidence; Declaration of George W. Abele in Support Thereof | UPS reasserts its objections raised in its Motion *in Limine* No. 3: Irrelevant (FRE 401, 402) because the discovery dispute has been resolved; Unfair Prejudice, Confusion, and Waste of Time (FRE 403). UPS further objects based on the Court's April 14, 2009, ruling on UPS's Motion *in Limine* No 3. Therein, the Court excluded any reference to the Court's prior adjudication of discovery disputes. Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objectionss after the Bates numbers are identified. |

-49-

LEGAL_US_W # 61535112.2

| 120 | Defendant United Parcel Service, Inc.'s Opposition to Plaintiff's Ex Parte Application for Sanctions for Failure to Produce Person Most Knowledgeable Re: Alleged Computer Crash; Declaration of George W. Abele in Support Thereof | UPS reasserts its objections raised in its Motion *in Limine* No. 3: Irrelevant (FRE 401, 402) because the discovery dispute has been resolved; Unfair Prejudice, Confusion, and Waste of Time (FRE 403).<br><br>UPS further objects based on the Court's April 14, 2009, ruling on UPS's Motion *in Limine* No 3. Therein, the Court excluded any reference to the Court's prior adjudication of discovery disputes.<br><br>Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |
| --- | --- | --- |

-50-

LEGAL_US_W # 61535112.2

| 121 | Defendant's Ex Parte Application for Protective Order Limiting Discovery to the Depositions Permitted By the Court; Declaration of George W. Abele in Support Thereof | UPS reasserts its objections raised in its Motion *in Limine* No. 3: Irrelevant (FRE 401, 402) because the discovery dispute has been resolved; Unfair Prejudice, Confusion, and Waste of Time (FRE 403).

UPS further objects based on the Court's April 14, 2009, ruling on UPS's Motion *in Limine* No 3. Therein, the Court excluded any reference to the Court's prior adjudication of discovery disputes.

Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |

-51-

| 122 | Notice of (1) Renewal of Ex Parte Application for a Protective Order, and (2) Clarification of Record; Declaration of George W. Abele in Support Thereof | UPS reasserts its objections raised in its Motion *in Limine* No. 3: Irrelevant (FRE 401, 402) because the discovery dispute has been resolved; Unfair Prejudice, Confusion, and Waste of Time (FRE 403).

UPS further objects based on the Court's April 14, 2009, ruling on UPS's Motion *in Limine* No 3. Therein, the Court excluded any reference to the Court's prior adjudication of discovery disputes.

Because Plaintiff has not identified Bates numbers for this Exhibit, UPS reserves its right to supplement its objections after the Bates numbers are identified. |
| 123 | MOPs for Olympic and Van Nuys (including D-130 – 138, D-28465 – 28973 & D-31201 – 36918 | Regarding MOPs for the Olympic facility, UPS objects on the following grounds:  Irrelevant (FRE 401, 402); Unfair Prejudice, Confusion, and Waste of Time (FRE 403). |
| 125 | Marlo Timecards (Bates PL 2900-2979). | UPS objects because Plaintiff's description does not match Plaintiff's documents produced bearing Bates numbers PL 2900 through PL 2979. Documents PL 2900 through PL 2979 are portions of various UPS training.  Because Plaintiff has failed to accurately identify the exhibit, UPS reserves its right to object after the exhibit is clearly designated. |

-52-

LEGAL_US_W # 61535112.2

| 126 | CD Containing voicemail messages from Bob Hornung (PL 2841) | Irrelevant (FRE 401, 402); Hearsay (FRE 802); Not Authentic (FRE 901). |
|-----|------|------|

11.    Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

(a)    Plaintiff's list of deposition testimony:

(i)    Dean Huffer

(b)    Defendant's list of deposition testimony:

(i)    Dean Huffer

(c)    Plaintiff objects to the presentation of testimony by deposition of the following witnesses:

(i)    The parties reserve the right to object to the specific designations of Dean Huffer's testimony after those designations are exchanged.

(d)    Defendant objects to the presentation of testimony by deposition of the following witnesses:

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2

(i)     The parties reserve the right to object to the specific designations of Dean Huffer's testimony after those designations are exchanged.

12.     The following law and motion matters and motions in limine, and no others, are pending or contemplated:

The parties submit the Court must resolve the following legal issues prior to the commencement of trial:

(i)     Is Plaintiff entitled to straight time pay for hours worked over eight in a workday or over 40 in a workweek, during the time that he was exempt from overtime under the Motor Carrier Act exemption? [18]

(ii)     Is Plaintiff entitled to recover one hour of premium pay for each meal period violation and each rest break violation (maximum of two for any given day) or only one hour of premium pay for any day in which a rest or meal break violation occurs (maximum of one for any given day) under California Labor Code Section 226.7 and Sections 11 & 12 of Wage Order 9?

(iii)     What is the legal interpretation of the requirement under Labor Code Section 512 that an employer "provide" an employee with a meal period of not less than 30 minutes?[19]

_____

[18] This issue has been briefed by the parties and a decision from the Court is pending.

[19] Both issues regarding the scope and recovery available under California Labor Code Sections 226.7 and 512 will be fully briefed by the parties (pursuant to the Court's Minute Order dated April 9, 2009) by noon on Friday, April 24, 2009.

-54-
FINAL PRE-TRIAL CONFERENCE ORDER
LEGAL_US_W # 61535112.2

UPS submits that the Court must resolve the additional following legal issues prior to the commencement of trial:

(iv)   Is the imposition of discipline, or withholding the imposition of discipline, a "change in status," as that phrase is used in the executive exemption?

(v)   Because UPS bears the burden of proof to establish the application of the executive or administrative exemption, should UPS be permitted to present evidence and argument in sur-reply, following Plaintiff's rebuttal evidence and argument?

(vi)   Since UPS does not intend to assert that Plaintiff misperformed duties communicated to him, as that defense is articulated in *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 802 (1999), should Plaintiff be permitted to call other Full Time Supervisors to testify regarding their own performance of hourly work, or how they perform their own duties?[20]

13.   Bifurcation of the following issues for trial is ordered:  None.

14.   The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

---

[20] This issue differs from UPS's assertion that, to properly consider whether Marlo met the tests of the exemptions, the jury is entitled to hear and see, through testimony and exhibits, what actual expectations the company had and what instructions the company communicated to Plaintiff regarding his duties. *See* Wage Order 9-2001, Sections 1(A)(1)(e) and 1(A)(2)(e).  Such expectations and instructions are relevant, because they permit an inference that Marlo performed in accordance with the authority given to him.

IT IS SO ORDERED

DATED: 4-2-09

JUDGE DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

-55-

Dated: _____, 2009

_____
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

FURUTANI & PETERS, LLP

By: __/s/ John A. Furutani_____
        John A. Furutani

Attorneys for Plaintiff
MICHAEL MARLO

PAUL, HASTINGS, JANOFSKY & WALKER, LLP

By: __/s/ George W. Abele_____
        George W. Abele

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

FINAL PRE-TRIAL CONFERENCE ORDER

LEGAL_US_W # 61535112.2