O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL MARLO,                    )  Case No. CV 03-04336 DDP (RZx)
                                  )
            Plaintiff,            )  **ORDER RE: (1) SCOPE OF THE MOTOR**
                                  )  **CARRIER ACT EXEMPTION, (2)**
      v.                          )  **PREMIUM PAYMENTS PURSUANT TO**
                                  )  **LABOR CODE § 226.7, AND (3) THE**
UNITED PARCEL SERVICE, INC.,      )  **MEANING OF "PROVIDE" UNDER**
a corporation,                    )  **§ 226.7**
                                  )
            Defendant.            )  [Motion filed on April 17, 2009]
_____     )

      This California wage and hour case proceeds to trial on

Tuesday, May 5, 2009.  In this Order, the Court addresses

outstanding issues raised by the parties: (1) the scope of the

Motor Carrier Act exemption, (2) payment for missed meal and rest

breaks under California Labor Code § 226.7, and (3) the requirement

that employers "provide" meal periods.[1]

**I.   MOTOR CARRIER ACT EXEMPTION - SCOPE**

      The Court turns first to an issue left unresolved by the

Court's March 19, 2009 order granting UPS's motion for summary

_____

      [1]Because the facts and procedural history of this case are
well-known to the parties, the Court does not recite that
background here.

judgment on the Motor Carrier Act Exemption.  See Order (1)
Granting Defendant's Motion for Partial summary Judgment as to the
Motor Carrier Act Exemption, (2) Denying Plaintiff's Motion for
Summary Judgment as to the Motor Carrier Act Exemption, and (3)
Denying in Part and Sustaining in Part Plaintiff's Request for
Sanctions and Objections to Evidence (Docket Entry No. 798) (March
19, 2009).  In that order, the Court held that Marlo falls under
the exemption contained in section 3(L) of IWC Wage Order No. 9,
codified at Title 8, § 11090 of the California Code of Regulations
("C.C.R."), during the periods that he held the position of On-Road
Supervisor.  The parties debate the implications that ruling for
Marlo's potential recovery.[2]  The parties agree that the Motor
Carrier Act exemption does not exempt UPS from providing Marlo with
meal or rest periods.  See Def.'s Supp. Br. at 1 n.1; Pl.'s Supp.
Br. at 2.  In particular, the parties debate whether, if only the
Motor Carrier Act exemption applies to Marlo's time as an On-Road
Supervisor (i.e., neither the executive nor administrative
exemption applies), Marlo is entitled to compensation beyond his
salary for any time worked over forty hours per week at his regular
hourly rate – in other words, whether Marlo is entitled to
"straight time."

Under California law, the Motor Carrier Act exemption is
located at subsection L of section 3 of IWC Wage Order No. 9.  8
C.C.R. § 11090(3)(L).  It provides that the provisions of *§ 3* are

---

[2]Because Marlo raised this issue at oral argument on the
hearing for the Motion for Summary Judgment, the Court requested
short supplemental briefing on the topic.  See Order Requesting
Short Supplemental Briefing on Two Issues (Docket Entry No. 794)
(February 25, 2009).

"not applicable to employees whose hours of service are regulated" by the Motor Carrier Act.[3]  Section 3, titled "Hours and Days of Work," sets out: (1) overtime rates of pay and when those rates of pay apply; (2) alternative workweek schedules; and (3) limits on the number of hours an employee may work in certain situations. Section 4 contains the minimum wage requirement and sections 11 and 12 contain meal and rest break requirements.

Marlo argues that the Motor Carrier Act exemption exempts an employee *only* from (as relevant here) the premium rate for overtime compensation; it does not exempt an employee from being paid for hours worked over forty.  For those hours, Marlo argues, he would be entitled to a regular rate of pay as established by dividing his weekly salary by forty hours.  He would be entitled to that pay in addition to his salary.  UPS argues that the Motor Carrier Act exemption exempts UPS from paying Marlo any time beyond his salary because his salary is intended to cover all hours worked.  The parties have cited no case that directly resolves this issue.

The Court finds that because the overtime provisions do not apply and because Marlo neither alleges a Labor Code § 1194 claim nor a breach of contract claim, Marlo may not seek straight time beyond his salary for the time he was an On Road Supervisor. Section 3 of IWC Wage Order No. 9, like § 510 of the California Labor Code, sets out a prohibition on employee work over 40 hours per week unless the employee is compensated at the applicable overtime rate for all additional hours.  Because § 3(L) of the wage

---

[3]By contrast, the executive, administrative, and professional exemptions provide an exemption from the entire wage order.  8 C.C.R. § 11090(1).

order applies, however, the prohibition on hours worked contained

is inapplicable.  <u>See</u> Final Pretrial Conference Order (Docket Entry

No. 870) (April 22, 2009), at 5-6.

The parties do not appear to debate that Marlo must be paid

for all of the hours he worked.  In support of his argument that he

is entitled to straight time, Marlo cites two cases showing that

the hourly employee who was exempt under the FLSA Motor Carrier Act

was nevertheless actually paid for his work over forty hours.  <u>See</u>

<u>Morris v. McCombs</u>, 332 U.S. 422, 428-30 (1947) (addressing FLSA

exemption, not California Wage Order); <u>Hodgson v. Ellis Transp.</u>

<u>Co.</u>, 1971 WL 687 (C.D. Cal. January 14, 1971).  That Marlo was paid

on a salary basis, as opposed to hourly, is the critical

distinction according to UPS.  The parties do not appear to debate

that, if Marlo were an hourly employee, he would be entitled to

payment at his hourly rate (as opposed to an overtime rate) for all

hours he worked.  Indeed, UPS is not suggesting that Marlo deserves

no pay for hours beyond 40 simply because he is salaried.  Rather,

UPS explains that, through his salary, Marlo *was* paid for *all* hours

worked because his salary was intended to cover all hours worked.

Although Marlo notes that individuals who fall under the Motor

Carrier Act exemption are often paid hourly, Marlo does not appear

to argue that he may not be paid on a salary basis under California

law or federal law interpreting the Motor Carrier Act.  However,

Marlo appears to argue that a salary cannot be considered to cover

all hours worked unless the employee is exempt under the executive,

administrative, or professional exemption; rather, Marlo appears to

argue, any salary presumptively covers only a 40-hour work week.

At first glance, Marlo's argument draws some support from the

4

California approach to calculating the overtime rate.  California

law generally requires that, when a court or employer calculates

the overtime rate of compensation for a salaried full-time

employee, the individual's regular weekly salary is divided by 40.

Cal. Labor Code § 515(d)("For the purpose of computing the overtime

rate of compensation required to be paid to a nonexempt full-time

salaried employee, the employee's regular hourly rate shall be 1/40

th of the employee's weekly salary."); see 2002 Update to 1998 DLSE

Enforcement Policies and Interpretations Manual, § 48.1.5.4.  The

DLSE's justification for its approach (as opposed to the

"fluctuating work week" approach) is that California's "premium pay

for overtime is to . . . create a disencentive to employers to

impose overtime on employees," and that dilution of that premium

would lessen the disincentive.  DLSE Manual, § 48.1.4.  Marlo has

pointed to no similar rule that applies in a wage and hour context

other than calculating the rate of overtime pay, such as, for

example, calculating minimum wage.  Relatedly, Marlo has not

explained how the forty-hour work week base line is relevant in a

context where overtime is not required or why the flexible work

week rule would be inappropriate outside the overtime context.[4]

Because the Motor Carrier Act exemption provides that the *entirety*

of the overtime rules do not apply, the Court is not persuaded that

Marlo is entitled to a presumption that he receives straight time

above and beyond his salary.

---

[4]For example, the Wage Order's definition of "workweek" does
not include a presumption that the appropriate work week is 40
hours.  See 8 C.C.R. § 11090(2).

The California court of appeal's decision in Armenta v. Osmose, Inc., 135 Cal. App. 4th 314 (2005), does not counsel to the contrary. In Armenta, the plaintiffs were paid hourly wages ranging between $9.08 and $20.00, depending on their position. The plaintiffs claimed that the company had not paid them for hours to which they were entitled, had therefore violated the requirement that employees be paid a minimum wage. Cal. Labor Code § 1194. The employer argued that it had not violated the minimum wage requirement because, even though the plaintiffs had not been paid for certain hours, their average rate of pay including those extra hours was still above the minimum wage. The court rejected the employer's argument. The court explained that the "minimum wage standard applies to *each hour* worked by respondents for which they were not paid." Id. Although Marlo emphasizes that he must be paid for "all hours worked," he does not explain how Armenta's rejection of the averaging method for *hourly* employees bears on a *salaried* employee like him. As far as the Court can tell, Armenta does not apply in this case: unlike the plaintiffs there, Marlo does not bring a Labor Code § 1194 claim and is not an hourly employee.

The Court is wary of ruling in a way that undermines the protections afforded to workers under California's wage and hour laws or offends the structure set out by the wage and hour scheme. Upon consideration, however, it appears to the Court that the policy considerations underlying this issue point in both directions. On the one hand, California wage and hour law treats workers who are not exempt from an entire wage order (e.g., because they are executive employees) in a sense like hourly employees,

whether or not they are paid by a salary: although employees may be paid by salary, employers must keep track of the hours these employees work, they are entitled to overtime above and beyond their salary when they work more than forty hours per week, and their overtime compensation is based on a calculation of their hourly rate.   As Marlo points out, in many cases, employees subject to the Motor Carrier exemption will be so-called "blue-collar" workers, to whom the wage and hour laws were meant to apply.   The employer-employee relationship is not devoid of flexibility or completely protected from the market, however.   In a context where an overtime rate does not apply, the parties have pointed the Court to no provisions of the Labor Code that suggest it would be inappropriate for an employer and employee to contract for a different salary structure, i.e., one in which the employer is paid at a higher salary and has a flexible work week, on the basis of a market that will depend on the skill level and demand for a certain type of employees.   The law does not leave such an approach without bounds: on one end, the minimum wage provisions, as well as the requirements that employees are provided meal and rest breaks, provide protections from salary abuse; on the other, the regulations enacted pursuant to the Motor Carrier Act further provide a limit on the amount of time such an employee may work.[5] And nothing precludes unionized employees from entering into collective bargaining agreements as to pay, time, and benefits.

The Court therefore holds that the application of the Motor Carrier Act exemption precludes Marlo from seeking pay for hours in

---

[5]See, e.g., 8 C.C.R. § 11090(4); 49 C.F.R. § 395.3.

1 excess of forty.  Marlo has not suggested that his salary was
2 intended to cover only forty hours, and this is not a situation
3 where Marlo was an hourly employee who claims he was not
4 compensated at his hourly rate for hours he in fact worked under
5 either Labor Code § 1194 (regarding minimum wage) or a breach of
6 contract action.

7 **II.   CALIFORNIA LABOR CODE § 226.7 and § 512**

8     The parties seek a ruling on two issues under California Labor
9 Code § 226.7, related to Marlo's claims for damages for missed meal
10 and rest periods.  First, the parties debate whether § 226.7
11 provides for (1) one hour of pay for each workday an employee
12 misses a meal period and one hour of pay for each workday an
13 employee misses a rest period or (2) on hour of pay for each
14 workday an employee misses a meal period, a rest period, or some
15 combination.  Second, the parties debate UPS's obligation to
16 provide its nonexempt employees with meal periods under Labor Code
17 § 226.7.  Both issues arise in the context of jury instructions.

18     **A.   Payment for Missed Meal & Rest Breaks**

19     The parties first dispute whether Marlo may be compensated
20 once or twice per day under Labor Code § 226.7.  The parties agree
21 that the premium wage provided by § 226.7 is one additional hour of
22 pay.  They disagree, however, on how many additional hours Marlo is
23 entitled to receive in the event he missed one or more meal periods
24 *and* one or more rest periods on any particular day.  Marlo argues
25 that he may be compensated once for each workday that he missed a
26 meal period and once for each work day that he missed a rest period
27 – or, in other words, that he may receive up to two § 226.7 premium
28 work days.  UPS argues that the statute evinces a clear intent to

1  impose a premium wage that is not based on the number of violations

2  that occur, but on the number of *days* any violations occur.

3  Neither party proffers a case that resolves this issue as part of

4  its holding or an administrative interpretation that might shed

5  light on the section.

6      Section 226.7 provides, in relevant part:

7      (b)  If an employer fails to provide an employee a meal period

8          or rest period in accordance with an applicable order of

9          the Industrial Welfare Commission, the employer shall pay

10          the employee one additional hour of pay at the employee's

11          regular rate of compensation for each work day that the

12          meal or rest period is not provided.

13  Cal. Labor Code § 226.7(b).  IWC Wage Order No. 9 considers meal

14  periods and rest periods in different sections.  Subsection 11(D)

15  provides that "[i]f an employer fails to provide an employee a meal

16  period in accordance with the applicable provisions of this order,

17  the employer shall pay the employee one (1) hour of pay at the

18  employee's regular rate of compensation for each work day that the

19  meal period was not provided."  8 Cal. Code Reg. § 11090(11)(D).

20  Subsection 12(B) provides that "[i]f an employer fails to provide

21  an employee a rest period in accordance with the applicable

22  provisions of this order, the employer shall pay the employee one

23  (1) hour of pay at the employee's regular rate of compensation for

24  each workday that the rest period is not provided."  Id. at §

25  11090(12)(B).

26      The Court begins with the text of § 226.7.  Focusing on the

27  use of the disjunctive "or" and the use of the term "work day,"

28  both parties present a reasonable way to parse subsection (b).

Marlo focuses on the use of the disjunctive "or."   Marlo argues that the use of "or" signals that the violation of a meal period requirement and the violation of a rest break requirement constitutes two separate violations.  According to Marlo, the text therefore suggests that each *type* of violation can lead to one hour of extra compensation.  UPS argues that the use of "or" signals that, even if distinct violations have occurred, the statute only punishes per *workday*.  The parties do not appear to dispute that multiple violations of the rest break requirement in a single work day would result in only one additional hour of compensation for the employee.  UPS essentially argues that if the legislature had sought to break out the premium wage requirement, it could have done so through providing separate sections for meal and rest breaks or through clearer language.

To support his interpretation, Marlo points to the language in § 226.7(b) referring to the IWC Wage Orders and to the structure of those orders.  Subsection (b) provides that if an employer fails to provide a meal period or rest period "in accordance with" the applicable wage order, the employer must pay one additional hour of compensation for each workday that the meal or rest period is not provided.  Marlo argues that this language signals an intent to incorporate the language of the Wage Order.  The structure of the wage orders supports Marlo's position.[6]  Using IWC Wage Order No. 9 as an example, the Wage Order sets out the requirements for meal and rest breaks in two separate sections.  See 8 C.C.R.

---

[6]In light of what the Court considers to be the clear structure of IWC Wage Order No. 9, the Court is not persuaded by UPS's administrative history argument to the contrary.

§ 11090(11)-(12).  Each section provides one hour of compensation for the violation of that section per workday.  Id.[7]  The grammatical structure of § 226.7(b) does not compel the result Marlo seeks, however.  The "in accordance with" language is located in the *first* clause of § 226.7(b) – the clause describing when an employer violates § 226.7 – as opposed to the *second* clause of § 226.7(b), which describes what the employer must pay when a meal or rest period is not provided.

The legislative history likewise could be read to support either party's position.  The Legislature's apparent cognizance of the wage orders, however, suggests that Marlo's interpretation may square better with that history.  On the one hand, as Marlo emphasizes, the legislature has signaled that it was cognizant of the requirements of the wage orders, and the timing of the respective provisions is consistent with such a reading.  Additionally, at least one district court in California has quoted the following language from a letter from the author of Assembly Bill 2509, which enacted § 226.7: "this bill codifies the actions of the IWC establishing a penalty for an employer who violates the law requiring meal and rest periods."  See Doe v. D.M. Camp & Sons, 2009 WL 921442, *10 (E.D. Cal. March 31, 2009); accord Murphy, 40 Cal. 4th at 1107 ("In discussing the amended version of section 226.7, which ultimately was signed into law, the Senate Rules Committee explained that the changes were intended to track the

---

[7] Most of the other IWC wage orders are structured consistently.  See 8 C.C.R. §§ 11010-130, 11150-60; but see 8 C.C.R. § 11140(11)-(12) (not explicitly providing premium wage for either meal period or rest period); id. § 11170 (not providing for rest period).

existing provisions of the IWC wage orders regarding meal and rest periods."). On the other hand, three factors suggest that the legislature may have intended to impose a different premium wage: (1) the legislature chose a different structure from that provided in the wage orders (one provision describing the premium wage to be applied as opposed to two provisions); (2) the legislature incorporated the wage orders into the first clause of § 226.7(b) and not the second; and (3) the legislature used the structure it did as opposed to an alternative that more clearly supports Marlo's reading, such as payment of one hour's compensation per workday that a meal period is not provided *and* one hour's compensation per workday that a rest period is not provided.[8]

The only two cases that the parties cite to address the issue appear to support UPS's interpretation. The parties cite only two cases that seem to address this issue, though it does not appear to be part of the holding of either. In <u>Corder v. Houston's Restaurants, Inc.</u>, the district court primarily addressed whether the one hour compensation due under § 226.7(b) was a penalty. 424 F. Supp. 2d 1205, 1207 (C.D. Cal. 2006). Among other allegations, the plaintiff claimed that Houston's had failed to provide her with meal and rest periods or compensation in lieu thereof. <u>Id.</u> at 1206. In a footnote, the court explained that the parties "disagree[d] about whether Labor Code [§] 226.7 requires an employer to pay the employee for each break missed, or whether the

---

[8]The Court finds other comments in the legislative history highlighted by the parties relatively unhelpful here. Because those comments largely track the language of the section, to the extent the language of the section is unclear, the commentary sheds little to no additional light on the intent in this situation.

statute requires an employer to pay the employee for each work day that breaks were not provided." <u>Id.</u> at 1207 n.2.  Based on the use of "for each work day," the court concluded that "the plain wording of the statute is clear that an employer is liable per work day, rather than per break not provided." <u>Id.</u>[9]  The court did not discuss the legislative history, wage orders, or policy.

In <u>Murphy v. Kenneth Cole Productions, Inc.</u>, the California Supreme Court mentioned this issue, but did not address it as part of the holding in that case.  40 Cal. 4th 1094, 1112 (2007).  In <u>Murphy</u>, the court addressed the question of whether the one hour of pay provided in § 226.7(b) constituted a penalty or a wage, and concluded that it was the latter.  Discussing why it did not consider the premium wage to be a penalty, the court noted that the defendant argued in part that the additional hour of pay was a penalty "because it is imposed without reference to actual damage, since an hour of pay is owed whether the employee has missed an unpaid 30-minute meal period, two paid 10-minute rest periods, or some combination thereof." <u>Id.</u> at 1112.  Though the Supreme Court disagreed with the defendant's argument that this supported finding the premium wage to be a penalty, the court neither disputed plaintiff's characterization of § 226.7(b) nor expressly agreed with it.  <u>Id.</u>  The court explained that the pay "is not transformed into a penalty merely because a one-to-one ratio does not exist

---

[9] Marlo correctly points out that <u>Corder</u>'s conclusion that the one hour of pay was a penalty is not good law after <u>Murphy v. Kenneth Cole Prods., Inc.</u>, 40 Cal. 4th 1094 (2007).  It does not automatically follow, however, that every conclusion by the district court is likely to have been incorrect, particularly because the question of whether the one hour's pay is a penalty had led to conflicting views from the courts prior to <u>Murphy</u>.

between the economic injury caused by the meal and rest period violations on the one hand and the remedy selected by the Legislature on the other hand. . . . Courts have long recognized that the monetary value of harm to employees can be difficult to ascertain." Id.  Indeed, a "focus on the apparent lack of a perfect correlation between the section 226.7 remedy and the employee's economic injury also ignores the noneconomic injuries employees suffer from being froced to work through rest and meal periods." Id. at 1113.  (The court of appeal had not addressed this issue.  See Murphy v. Kenneth Cole Productions, Inc., 36 Cal. Rptr. 3d 418, 440 n.25 (Cal. Ct. App. 2005).)  The Court notes that the Murphy reasoning would still apply whether or not the court had agreed with the defendant's characterization of the statute.

Finally, Marlo looks to public policy.  Because meal period violations and rest period violations are separate kinds of violations, Marlo argues, it would make sense to impose a premium wage for each type of violation.  Marlo emphasizes that such an approach would best square with the "health and safety considerations" that "motivated the IWC to adopt mandatory meal and rest periods in the first place." See Murphy, 40 Cal. 4th at 1113. However, because the premium wage reflects a calculation of noneconomic injury, the alternative interpretation would not necessarily be contrary to public policy.  Overall, because the remedy does not exactly track with the economic injury, how the public policy weighs is difficult to discern.

The best resolution of this inconclusive authority is to look to the structure provided by the wage orders.  In describing the legislative history of § 226.7, the Murphy court expressly noted

that the Senate had changed the payment amount (from twice the wage to one additional hour of pay) to "track the existing provisions of the IWC wage orders regarding meal and rest periods."  40 Cal. 4th at 1107.  Although the <u>Murphy</u> court did not quarrel with the defendant's characterization of how many premiums the plaintiff was to provide, the court did find the point for which the defendant made that characterization unavailing.  <u>Id.</u> at 1112.  As described above, the Wage Orders provide a separate remedy for violations of meal period requirements and violations of rest period requirements.  Allowing an employee to recover one hour of pay for each *type* of violation listed in the statute per work day is not contrary to the "one additional hour" "per work day" language in § 226.7(b).  Moreover, providing one additional hour for each *type* of violation strikes the proper balance in incentives for employers: by providing no additional premium wage when the second type of violation occurs, the alternative approach would encourage an employer to require an employee who has missed a ten-minute rest break to also miss his lunch period.

Marlo may recover up to two additional hours of pay on a single work day for meal period and rest break violations: one if any meal period violations occur in a work day and one if any rest break violations occur in a work day.  However, if more than one rest period violation occurs in a single work day but no meal period violations occur, Marlo may only recover one additional hour of pay for all of the rest period violations combined; likewise, if more than one meal period violation occurs in a single work day but no rest period violations occur on that day, Marlo may only recover

1  one additional hour of pay for all of the meal period violations
2  combined.
3      **B.   Requirement that Employers "Provide" Meal Periods**
4      The parties also dispute UPS's obligation under California
5  Labor Code §§ 512 and 226.7 and IWC Wage Order 9 to provide meal
6  periods.[10]  Relying on <u>Cicairos v. Summit Logistics, Inc.</u>, 133 Cal.
7  App. 4th 949 (2005), Marlo argues that employers have an
8  affirmative obligation to ensure that workers are actually relieved
9  of all duty during the required meal period.  UPS argues that it
10 need only provide nonexempt employees the opportunity to take a
11 meal break, not to ensure that meal breaks actually are taken.  The
12 Supreme Court of California has granted review of this issue.
13     Two Labor Code provisions and the language of IWC Wage Order
14 No. 9 are principally at issue here.  Section 512 reads, in
15 relevant part: "An employer may not employ an employee for a work
16 period of more than five hours per day without providing the
17 employee with a meal period of not less than 30 minutes . . . . An
18 employer may not employ an employee for a work period of more than
19 10 hours per day without providing the employee with a second meal
20 period of not less than 30 minutes . . . ."  Cal. Labor Code
21 § 512(a).  Section 226.7 reads, in relevant part: "(a) No employer
22 shall require any employee to work during any meal or rest period
23 _____
24     [10]As discussed above, Labor Code § 226.7 covers obligations
   for both meal periods and rest breaks.  The parties do not dispute
25 the nature of UPS's obligation with respect to ten-minute rest
   breaks.  Rather, the parties dispute UPS's concern with respect to
26 meal periods.  <u>Compare</u> 8 C.C.R. § 11090(11)(A) ("No employer shall
   employ any person for a work period of more than five hours without
27 a meal period of not less than 30 minutes . . .") <u>with</u> 8 C.C.R.
   § 11090(12)(A) ("Every employer shall authorize and permit all
28 employees to take rest periods. . . ").  <u>See</u> <u>White v. Starbucks</u>,
   497 F. Supp. 2d 1080, 1085-86 (N.D. Cal. 2007).

mandated by an applicable order of the Industrial Wage Commission. (b) If an employer fails to provide an employee a meal period . . . ." <u>Id.</u> at § 226.7(a)-(b).  IWC Wage Order 9 reads, in relevant part: "(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than thirty minutes . . . .  (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing an employee with a second meal period of not less than thirty minutes . . . ."  8 Cal. Code Regs. § 11090(11)(A)-(B).

Marlo argues that the California Court of Appeal's opinion in <u>Cicairos v. Summit Logistics, Inc.</u>, 133 Cal. App. 4th 949 (2005), mandates that employers "ensure employees are actually relieved of all duty" so that they can actually take their meal periods.  In <u>Cicairos</u>, the California Court of Appeal considered whether the employer of certain truck drivers had provided meal periods to the employees.  The defendant employers had used an "Activity Based Compensation" system in determining the plaintiffs' wages.  133 Cal. App. 4th at 955.  Each truck had a computerized system which recorded factors such as speed, starts and stops, and time, and the employees had to manually input factors for accurate tracking.  <u>Id.</u> "Absent one of the designated reasons for a delay, a trip that took longer than expected resulted in a loss to the driver because the driver was not paid for the extra time."  <u>Id.</u> at 955-56.  The defendant neither scheduled meal periods nor included an activity code for them such that they were on a list of acceptable delays. <u>Id.</u>  The court found that the employer had not met its burden to establish at summary judgment that it provided the plaintiffs with their required meal periods.  <u>Id.</u> at 962-63.  In particular, the

court noted that the defendant did not schedule meal periods or provide an activity code for them while management simultaneously "pressured drivers to make more than one daily trip, making drivers feel that they should not stop for lunch."  <u>Id.</u> at 962.  The court explained that "[u]nder the facts presented . . ., the defendant's obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming that the meal periods were taken because employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.'"  <u>Id.</u> (quoting Dep't of Industrial Relations, DLSE, Opinion Letter No. 2002.01.28 (Jan. 28, 2002)).

UPS argues that the relevant provisions require an employer provide employees with the opportunity to take a thirty-minute meal period, but that the employer's obligation stops there.  That is, UPS argues that employers have no obligation to keep track of whether or not their employees actually take the meal period that is provided.  UPS looks first to the plain meaning of the word "provide," the word that all three relevant provisions consistently uses to characterize the employer's obligation,[11] as well as that word's use elsewhere in the Labor Code.  The dictionary definition of that word includes "[t]o make available."  Am. Heritage Dictionary, at 676 (4th ed. 2000).  Second, UPS explains that the

---

[11]The language of section 11(A) of IWC Wage Order No. 9 is slightly different.  That subsection is also consistent, however, with the word "provide."  Because Labor Code §§ 226.7 and 512(a) and IWC Wage Order No. 9's section 11(B) each use "provides," and because even <u>Cicairos</u> explains that the "language of IWC wage order No. 9 relating to meal periods tracks the language in the Labor Code," the Court finds that the language should be interpreted consistently.  <u>Cicairos</u>, 133 Cal. App. 4th at 952.  <u>See</u> <u>Brown v. Fed. Express Corp.</u>, 249 F.R.D. 580, 586 (C.D. Cal. 2008).

California Supreme Court has characterized the employee's right as one against being "forced to forgo" or "forced to work through" a meal period.  See Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1104, 1110, 1113 (2007).  Third, UPS points to numerous federal cases interpreting California state law, and rejecting the suggestion in Cicairos that the employer has an affirmative obligation to keep track of an employee.

The Court holds that these provisions require that employers make a meal period *available* to employees, but place them under no further obligations.  The Court agrees with UPS that this is the most natural reading of the statute's language.  The Court recognizes that the language used by the Cicairos court contemplates an affirmative obligation on employers to ensure that employees are relieved of all duty during a meal period.  So far as the court can tell, however, the majority of cases addressing Cicairos have held that the obligation is one to make a meal period *available*.  See White v. Starbucks, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) (Walker, C.J.); Brown v. FedEx, 249 F.R.D. 580 (C.D. Cal. 2008) (Fischer, J.); Kenny v. Supercuts, Inc., 252 F.R.D. 641 (N.D. Cal. 2008) (Breyer, J.); Salazar v. Avis Budget Group, Inc., 251 F.R.D. 529 (S.D. Cal. 2008) (Gonzalez, C.J.); Perez v. Safety-Kleen Sys., Inc., 253 F.R.D. 508 (N.D. Cal. 2008) (Hamilton, J.); Gabriella v. Wells Fargo Fin., Inc., 2008 WL 3200190 (N.D. Cal. 2008) (Illston).  See also  Wren v. RGIS Inventory Specialists, 256 F.R.D. 180, 208 (N.D. Cal. 2009) (Spero, J.); Watson-Smith v. Spherion Pacific Workforce, LLC, 2009 WL 426122, *2 n.1 (N.D. Cal. February 20, 2009) (White, J.); Carter v. Anderson Merchandisers, LP, 2008 WL 4948489 (C.D. Cal. November 18, 2008) (Phillips, J.).

1  In particular, the White court explained that such an

2  interpretation would place an undue burden on employers and would

3  "create perverse incentives."  Brown, 249 F.R.D. at 585 (citing

4  White).   The Court finds the reasoning from White and Brown

5  persuasive, and holds that an employer has no further obligation

6  than to make available the meal period.[12]

7        Marlo argues that UPS has missed its point, and White, Brown,

8  and the other cases are unhelpful.  According to Marlo, UPS is

9  focusing on the issue of whether an employer must "force" an

10 employee to take a break, but he is not advocating such a position.

11 Put differently, Marlo argues that there is an important

12 distinction between forcing an employee to take his break and

13 "ensuring" that an employee is relieved of all duties so that the

14 employee *may* take his break.   At the same time, Marlo appears to

15 argue that the cases UPS cites – e.g., White and Brown – are

16 *consistent* with his rule.  See Reply at 9:9-22 ("Cicairos is in

17 accord with the authorities cited by Defendant because an

18 employer's failure to ensure an employee is relieved of all duty

19 means that an employee has not been 'provided' an opportunity to

20 actually take the required meal break.").  In sum, Marlo appears to

21 be arguing that the statute (and wage order) requires one of two

22 things: either (1) that an employers must ensure that employees

23 actually take their meal breaks (a characterization which Marlo

24 rejects) or (2) that UPS must offer him the opportunity to take a

25

26        [12]The Court notes that UPS framed its argument as "provide"
27 means "provide an opportunity."  Because the language used by the
   dictionary definition and the other courts on which UPS relies is
28 that "provide" means "make available," the Court finds that
   language more appropriate.

1  duty-free meal period, but need not follow up to ensure he actually

2  takes that period.

3      Assuming that Marlo advances the latter argument, it appears

4  to the Court that the parties' approaches are not completely

5  contrary, but primarily differ in phrasing.  To the extent Marlo

6  argues that the opportunity to take a meal break must be a

7  meaningful one for it to count as a meal break "provided" by the

8  employer, the Court agrees, and the Court does not read UPS's

9  papers to advocate the opposite.  The various cases that doubted

10 the Cicairos rule largely did not disagree with its result based on

11 the facts of that case, where the employer's policies effectively

12 punished employees for taking meal breaks.  See White, 497 F. Supp.

13 2d at 1089; Brown, 249 F.R.D. at 586.  Additionally, the Court does

14 not understand UPS to argue that the meal break it makes available

15 can include ongoing duties.  See 8 C.C.R. § 11090(C).  That said,

16 the Court finds the "make available" language preferable to the

17 language proposed by Marlo, that the employer has an "affirmative

18 obligation to ensure that the employee is relieved of all duties."

19 This phrasing from Cicairos – especially the term "ensure" –

20 suggests that an employer's obligation is to actually determine

21 that the employee is no longer engaged in job duties, i.e., to

22 force a break.[13]  Even if Marlo does not suggest that a forced

23 break is required, the Court has some concerns that an instruction

24 using this language would be misleading and/or confusing for a

25 jury.  Rather, consistent with the various courts cited above, the

26 Court finds that the employer's obligation is to make a meal period

27 _____

28      [13]That the various courts have framed the Cicairos holding in
    this way supports such a reading.

1  available to an employee.  The Court does not read the parties to

2  be in disagreement as to whether this availability must be

3  meaningful, or whether the meal period offered must be one during

4  which the employee is "relieved of all duties."  See 8 C.C.R. §

5  11090(11)(C).  Whether UPS actually made meal periods available to

6  Marlo, or whether Marlo was forced to forgo meal breaks, is a

7  factual issue for the jury to decide.

8  IT IS SO ORDERED.

9

10

11  Dated: May 5, 2009

12                                      DEAN D. PREGERSON
                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28